**Louis BATISTA, Manuel Padin and Felix Padin, Jr., Plaintiffs-Appellees,**

v.

**Michael RODRIGUEZ, Robert J. Nadrizny and the City of Bridgeport, Defendants,**

**The City of Bridgeport, Defendant-Appellant.**

**No. 549, Docket 82–7545.**

United States Court of Appeals, Second Circuit.

Argued Jan. 20, 1983.

Decided March 11, 1983.

Raymond B. Rubens, Asst. City Atty., Bridgeport, Conn., for defendant-appellant.

Burton M. Weinstein, Bridgeport, Conn. (Weinstein & Weiner, P.C., Bridgeport, Conn., of counsel), for plaintiffs-appellees.

Before MANSFIELD and MESKILL, Circuit Judges, and NEAHER,* District Judge.

MANSFIELD, Circuit Judge:

Once again we are asked to delineate the contours of municipal liability under 42 U.S.C. § 1983 and *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The City of Bridgeport appeals from a final order entered after a jury trial in the District of Connecticut (Warren W. Eginton, *Judge*) denying its motion pursuant to Fed.R.Civ.P. 50(b) to set aside the verdict of the jury, which found the City liable to the plaintiffs for compensatory damages. Because we conclude that the complaint fails to state a claim entitling plaintiffs to relief against the City and the record furnished to us, even when viewed in the light most favorable to the plaintiffs, is insufficient to permit a reasonable juror to find that the City caused the plaintiffs to suffer any deprivation of their constitutional rights, we reverse.

The case arises out of a clash between the plaintiffs (Louis Batista, Manuel Padin and Felix Padin) and Bridgeport police on November 8, 1976, and events which occurred nine months later, on August 9, 1977, at a hearing held by a special Board of Inquiry

of the Bridgeport Board of Police Commissioners with respect to the alleged violation by police officers of plaintiffs' rights on November 8, 1976. According to the plaintiffs on November 8 they were cleaning up burning trash in front of Batista's house, when two Bridgeport police officers, Michael Rodriguez and Robert Nadrizny, approached Manuel Padin, demanded his name and address, and instructed him to get off the street. In response to Padin's request for an explanation, one officer grabbed him by the throat and the other struck him over the head. Felix Padin, Manuel Padin's brother, and Louis Batista ran over to investigate and Batista allegedly announced that he was a state correctional officer. All three were then arrested and charged with disorderly conduct and interfering with a police officer. In addition, Felix Padin was charged with assaulting a police officer. All charges against the three were ultimately dismissed.

The plaintiffs further testified that upon their arrival at police headquarters, officer Nadrizny dragged Manuel Padin out of the police car by the hair, struck him repeatedly, and smashed him into a doorway. He was treated for his injuries on the next day, after he had spoken with his lawyer.

Not surprisingly, the police officers' account of the events differs substantially from that of plaintiffs. Officer Nadrizny testified that on November 8, 1976 all police cars in the area were alerted to be on the lookout for certain persons engaged in burning trash cans, who were described as two black or Puerto Rican males, one wearing a knee-length plaid or tweed coat and the other a short jacket. Nadrizny and Rodriguez spotted two youths matching the description, standing next to a smouldering trash can. When the officers approached the youths and asked questions, the youths allegedly cursed at the officers and refused to cooperate. Nadrizny then arrested the youth later identified as Manuel Padin. As he was placing Manuel Padin in the car,

---

* Of the United States District Court for the Eastern District of New York, sitting by designation.

Felix Padin allegedly pulled on the officer's arm and then struck Nadrizny in the chest and attempted to strike the policeman in the face. Felix Padin was then placed under arrest. Louis Batista approached the police at this point, said he was a "cop, too," and allegedly tried to hinder the police from placing Felix Padin in the police car. Batista was then placed under arrest for interfering with a police officer. All three were transported to police headquarters for booking.

Subsequently, Batista and the Padins filed a formal complaint with the Police Department of the City of Bridgeport, alleging that the two police officers violated Department Rule No. 76, which requires police to treat persons fairly and humanely and to use only necessary physical force. On August 9, 1977, a hearing was held on this complaint before a special Board of Inquiry of the Board of Police Commissioners ("Board"). According to the complainants (who later became the plaintiffs in this action), they and their lawyer were kept waiting for hours and were subjected to "rude examination" by the Board. In addition, while the complainants were being examined by counsel for the police officers, the complainants' lawyer was ordered out of the hearing by the President of the Board of Police Commissioners in violation, the City concedes, of a settlement stipulation entered in *Barros v. Walsh,* No. B–482 (D.Conn., Dec. 20, 1973) ("*Barros* decree"). The Board did not take disciplinary action against police officers Rodriguez and Nadrizny.

On February 24, 1978, the three plaintiffs brought an action for damages under 42 U.S.C. § 1983 in the District Court of Connecticut against the two police officers, who were named in the first three counts, and against the City, named in the fourth count only. There is no dispute that in the first three counts the plaintiffs stated a sufficient complaint under § 1983 against the police officers by claiming that on November 8, 1976, the plaintiffs were arrested without probable cause and that the Padins were subject to physical abuse by police officers acting under color of law.

The Fourth Count alleged that as part of a pattern of civil rights violations the Board of Police Commissioners acted wrongfully at the hearing on August 9, 1977.[1] Plaintiffs claimed injury because they were kept waiting hours, were insulted, and denied the right to counsel. They also claimed

---

1. Count Four of the Complaint states in entirety:

"*FOURTH COUNT:*

"11. The plaintiffs filed a formal complaint with the police department of the defendant City. During the course of the handling of said complaint by the defendant City, the plaintiffs and their attorney were kept waiting hours on one occasion before the Board of Police Commissioners of said City would hear them, although they were instructed to be present hours before they were actually heard. During the course of said hearings by the Board of Police Commissioners of the defendant City, the plaintiffs were subject to extremely rude examination by members of the Board of Police Commissioners and finally were not permitted to have their attorney present while they were being subject to examination by counsel for the defendant police officers. At the termination of the investigation, the Board of Police Commissioners of the defendant City found no basis for disciplinary action against the defendant police officers.

"12. The actions of the defendant City, acting by its Board of Police Commissioners

and police department are consistent with a pattern of repeated condonation and even rewarding of conduct which has, on numerous occasions, been found to constitute a violation of civil rights by judges or juries of the U.S. District Court for the District of Connecticut.

"13. The failure on the part of the defendant City to take any disciplinary action whatever in any of the cases in which police officers of said City have been found responsible for violations of civil rights by the U.S. District Court and the promotion of one of the police officers of the defendant City after a jury had awarded punitive damages against him for violation of civil rights, together with a refusal to allow complainants to be present with counsel while they are being subjected to cross-examination by counsel for the police officers complained about, constitute either a negligent or wilful and malicious course of conduct designed to promote violations of civil rights. Said conduct by the defendant City is either a nonfeasance or malfeasance for which the defendant City is liable to the plaintiffs."

injury because the City failed to take disciplinary action against the officers who were alleged in the first three counts to have unlawfully arrested and assaulted the plaintiffs. Count 4, however, did not purport to assert a claim for damages against the City based on the alleged arrests and assault by the police officers which had occurred nine months earlier. In the course of the proceedings, the plaintiffs never attempted to amend the Fourth Count to allege damages caused by the City based on the November 8, 1976 incident.[2]

At the close of trial the court charged the jury with respect to the first three counts, instructing that if the jury found that the police officers had arrested the plaintiffs without probable cause the jury was then to decide, first, whether the police officer making the arrests believed in good faith that he had a right to make the arrest and, second, whether he had a reasonable basis for such a belief. If so, the officers would not be liable. The interrogatories submitted to the jury did not refer specifically to this good faith-reasonable basis defense but simply asked whether the jury believed that the plaintiffs had proven by a preponderance of the evidence that the police had arrested the plaintiffs without probable cause. The jury found in favor of the police officers on the first three counts.

With respect to the Fourth Count, the court charged that it "involves the treatment of the plaintiffs by the Board of Police Commissioners." The court did not predicate the City's liability on a finding that the City caused the alleged unlawful conduct of the officers. The interrogatory submitted to the jury on the Fourth Count asked only whether the jury found that the evidence established "a pattern on the part of the City of Bridgeport of repeated condonation of conduct constituting a violation of civil rights." The court did not define what

was meant by such a "pattern of conduct." The jury found in favor of the plaintiffs on the Fourth Count and awarded compensatory damages of $3,000 to each of the Padins and $8,500 to Batista.

Pursuant to Fed.R.Civ.P. 50 the City moved to set aside the verdict on the grounds that the verdict on the Fourth Count was inconsistent with the verdict on the first three counts and contrary to law. The district court denied the motion. It acknowledged that the complaint was a "somewhat confusing document," but that the court's charge on Count 4 "concentrated the attention of the jury solely on the actions of the Board of Police Commissioners, and in no sense on the actions of the police officers during the prior arrests of the three individual plaintiffs." The court nevertheless also found that it was possible to read the Fourth Count as referring back to the earlier counts because of the identification of the police department in paragraph 12 and "an ambiguous incorporation of the conduct of the police officers" in paragraph 13. The court concluded that the jury could have determined that the arrests were made without probable cause but that the individual policemen reasonably believed in good faith that they had a right to make the arrests. The court declared, however, that "this is not a case involving allegations of deficient training." The court ruled that this alternative view of the Fourth Count could support the verdict, particularly since the City had failed to move to dismiss the Fourth Count or to object to the charge or the interrogatories.

## DISCUSSION

The principal questions raised are (1) whether the Fourth Count of the complaint states a claim upon which relief may be granted against the City under 42 U.S.C.

---

**2.** The plaintiffs moved for a directed verdict on March 12, 1982, on the Fourth Count based on the violation of the *Barros* decree, which the district court apparently treated as a motion to amend the complaint after *Monell* to allege the violation of the *Barros* agreement as an independent tort. The court denied the motion. The record reveals no attempt by plaintiffs to amend the Fourth Count to add an allegation that the City was responsible for the police officers' conduct on November 8, 1976.

§ 1983, which provides that a person acting under color of law who "subjects, or causes to be subjected any citizen of the United States" to deprivation of his constitutional rights is liable to the party injured, and (2) if so, whether the evidence, viewed in the light most favorable to the plaintiffs, was sufficient to sustain the verdict against the City.

*Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), held that municipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to a governmental custom, policy, ordinance, regulation, or decision. *Id.* at 690–91, 98 S.Ct. at 2035. The Court emphasized, however, that a city may not be held liable for the actions of its employees or agents under a theory of *respondeat superior, id.* at 691, 694, 98 S.Ct. at 2036, 2037; *Owen v. City of Independence,* 445 U.S. 622, 633, 100 S.Ct. 1398, 1406, 63 L.Ed.2d 673 (1980); it is liable only when its policy or custom inflicts the injury upon the plaintiff. *Monell, supra,* 436 U.S. at 694, 98 S.Ct. at 2037.

■ Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the City. *Id.* at 694 n. 58, 98 S.Ct. at 2037 n. 58; *Rizzo v. Goode,* 423 U.S. 362, 371, 375, 96 S.Ct. 598, 604, 606, 46 L.Ed.2d 561 (1976); *Owens v. Haas,* 601 F.2d 1242, 1246 (2d Cir.1979), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979). Thus, to hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. " '[T]he mere invocation of the 'pattern' or 'plan' [will] not

suffice without this causal link.' " *Black v. Stephens,* 662 F.2d 181, 189 (3d Cir.1981), *cert. denied,* 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982) (quoting *Lewis v. Hyland,* 554 F.2d 93, 98 (3d Cir.), *cert. denied,* 434 U.S. 931, 98 S.Ct. 419, 54 L.Ed.2d 291 (1977)).[3]

■ A plaintiff, suing under § 1983, while obligated to make "a short and plain statement" of the essential elements of his claim in his complaint, Fed.R.Civ.P. 8(a), is not required to set out the facts in detail. The complaint will survive dismissal "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957); *Owens v. Haas, supra,* 601 F.2d at 1247; *Escalera v. New York City Housing Authority,* 425 F.2d 853, 857 (2d Cir.), *cert. denied,* 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970).

■ The Fourth Count of the complaint arguably satisfies the requirement that it allege the first of the foregoing three essential elements, the existence of an official policy or custom, by alleging that the City, acting by its Board of Police Commissioners and police department, repeatedly condoned and even rewarded police conduct that had been adjudicated to be in violation of civil rights. We have held that municipal inaction such as the persistent failure to discipline subordinates who violate civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell. Turpin v. Mailet,* 619 F.2d 196, 201, 202 (2d Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1982) (citing *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976)); see also *Duchesne v. Sugarman,* 566 F.2d 817, 832 (2d Cir.1977); *Popow v. City of*

---

**3.** On the causal element in § 1983 actions against municipalities, see generally, Crocker, *When Cops are Robbers—Municipal Liability for Police Misconduct Under Section 1983 and Bivens,* 15 U.Rich.L.Rev. 295, 299–

300 (1981); Seng, *Municipal Liability for Police Misconduct,* 51 Miss.L.J. 1, 17 (1980); Schnapper, *Civil Rights Litigation After Monell,* 79 Colum.L.Rev. 213, 234 & n. 101, 235–40 (1979).

*Margate,* 476 F.Supp. 1237, 1246 (D.N.J. 1979).

The Fourth Count, however, fails completely to allege that the City's pattern of inaction caused the plaintiffs any compensable injury. It does not claim that the alleged unlawful arrests and assault of November 8, 1976, were the product of the City's alleged policy and practice or that the policy was even a substantial factor leading to those injuries, see *Doe v. New York City Department of Social Services,* 649 F.2d 134, 141 (2d Cir.1981). Indeed, the Fourth Count makes no reference at all to the events of November 8. For instance, there is no claim that officers Rodriguez and Nadrizny knew of the Board's alleged past failure to discipline or of any pattern of inaction, condonation, or rewarding of unlawful conduct on the part of the City, from which it might be inferred that they implemented it, whether or not in good faith. *Smith v. Ambrogio,* 456 F.Supp. 1130, 1136–37 (D.Conn.1978). Nor does that count allege conduct from which a causal connection between the City's policy of inaction and the arrests and assault might permissibly be implied, such as inadequate training and supervision or prior instances of unusual brutality indicating deliberate indifference or gross negligence on the part of the municipal officials in charge. *Owens v. Haas, supra,* 601 F.2d at 1246–47.

█ Count 4 does allege that the City, acting by its Board of Police Commissioners and the police department, acted wrongfully at the hearing of the plaintiffs' complaints on August 9, 1977, by keeping the plaintiffs waiting, insulting them, and denying them the right to counsel in contravention of the *Barros* decree. At oral argument plaintiffs' counsel claimed that this treatment of his clients by the Board on August 9, 1977, infringed the plaintiffs' First Amendment right as complainants at the hearing to petition the government for redress of grievances. The plaintiffs do not allege, however, that the police department used its power and resources to harass and deter complainants so as to deny them access to those tribunals. See *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 511, 92 S.Ct. 609, 612, 30 L.Ed.2d 642 (1972). Mere rudeness or inconvenience, however unpleasant, does not rise to the level of a cognizable "chill" on the exercise of First Amendment rights. The Constitution does not prohibit trifling interferences with personal sensibilities. *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). To suggest that rude and inconsiderate treatment of complainants before an administrative tribunal is prohibited by the First Amendment is to trivialize the significance of the right to petition the government, making of the Constitution "a font of tort law," and converting federal courts "into small-claims tribunals." See *Harbulak v. County of Suffolk,* 654 F.2d 194, 197 (2d Cir.1981) (quoting *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976), and *Parratt v. Taylor,* 451 U.S. 527, 554 n. 13, 101 S.Ct. 1908, 1922 n. 13, 68 L.Ed.2d 420 (1981) (Powell, J., concurring)). See Whitman, *Constitutional Torts,* 79 Mich.L.Rev. 5, 7 (1980).

The plaintiffs also claim that the violation of the *Barros* consent decree by itself infringed upon their constitutional rights. We disagree. Although they may have had a right under the *Barros* agreement to have counsel present at the hearing, the Constitution imposes no right to counsel at an administrative proceeding for a *complainant* who faces no loss or endangerment of liberty. Cf. *Argersinger v. Hamlin,* 407 U.S. 25, 37, 92 S.Ct. 2006, 2012, 32 L.Ed.2d 530 (1972). The remedy for breach of the *Barros* agreement is a suit for breach of contract or enforcement of the decree through judicial sanctions, including contempt, not an action under § 1983. See *United States v. City of Miami, Florida,* 664 F.2d 435, 439–40 (5th Cir.1981) (per curiam) (en banc); *Hopp Press Inc. v. Joseph Freeman & Co.,* 323 F.2d 636, 638 (2d Cir.1963); Comment, *The Consent Judgment as an Instrument of Compromise and Settlement,*

72 Harv.L.Rev. 1314, 1315–16 (1959); 1B *Moore's Federal Practice,* ¶ 0.409[5], at 1030 (2d ed. 1980 & Supp. 1982–1983).

We therefore conclude that the Fourth Count of plaintiffs' complaint failed to state a claim entitling them to relief against the City under § 1983. Moreover, even if we were to assume *arguendo* the existence of an allegation in the complaint of a causal connection between the alleged municipal policy or practice and the events of November 8, 1976, the record before us, as described by the parties,[4] viewed in the light most favorable to the plaintiffs, as it must be, *Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 696, 82 S.Ct. 1404, 1409, 8 L.Ed.2d 777 (1962); *Unijax, Inc. v. Champion Intern., Inc.,* 683 F.2d 678, 684 (2d Cir.1982), contains no proof of causation, i.e., that the police officers were executing a City policy. Although there was evidence of a few other cases in which Bridgeport police officers had been found responsible for civil rights violations and not disciplined, there is no evidence in the record furnished to us that officers Rodriguez and Nadrizny knew of these incidents or were aware of any City policy condoning police violations of civil rights. Nor did the incident of November 8, 1976, involve such egregious or brutal conduct that it, standing alone, could be attributed to a policy of inaction or gross neglect on the part of the City. A causal link cannot be inferred from municipal inaction alone. *Smith v. Ambrogio, supra,* 456 F.Supp. at 1136. Thus the verdict against the City was not reasonably based on evidence presented at trial. *Unijax, Inc. v. Champion Intern., Inc., supra,* 683 F.2d at 680 n. 6, 684; *Gehrhardt v. General Motors Corp.,* 581 F.2d 7, 14 (2d Cir.1978); *Michelman v. Clark-Schwebel Fiber Glass Corp.,* 534 F.2d 1036, 1042 (2d Cir.), *cert. denied,* 429 U.S. 855, 97 S.Ct. 236, 50 L.Ed.2d 166 (1976).

In view of the plaintiffs' failure to allege or prove the element of causation against the City, submission of the case against it to the jury amounted to plain error which could not be cured by the district court's instructions. In any event those instructions did not remedy the fatal deficiency. The district court, properly in our view, stated that the Fourth Count "involves the treatment of the plaintiffs by the Board of Police commissioners." However, it then instructed that if a "pattern was established" as the "proximate cause of the alleged violations of plaintiffs' rights" they could recover. This hardly amounted to a statement that the jury must first find that the City was the "moving force" behind the officers' actions, *Monell, supra,* 436 U.S. at 694, 98 S.Ct. at 2037, and in any event it was no substitute for the absence of proof of causation.

Under the circumstances the proper disposition was to set aside the verdict on the Fourth Count and enter a judgment n.o.v. in favor of the City. *Neely v. Martin K. Eby Construction Co.,* 386 U.S. 317, 329–30, 87 S.Ct. 1072, 1080, 18 L.Ed.2d 75 (1967); *Akermanis v. Sea-Land Service, Inc.,* 688 F.2d 898, 904 (2d Cir.1982); *Howes v. The Great Lakes Press Corp.,* 679 F.2d 1023, 1029–30 (2d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 452, 74 L.Ed.2d 605 (1982). Cf. Fed.R.Civ.P. 50(d).

The district court's order denying the City's motion for judgment notwithstanding the verdict is reversed and the case is remanded with directions to the district court to enter a judgment n.o.v. in favor of the City of Bridgeport.

**4.** The parties did not supply the Court with the    trial transcript, see Fed.R.App.P. 10(d).