**Nathaniel CARTER, Plaintiff,**

v.

**Henry HARRISON, Police Officer, New York City Police Department; William C. Fredericks, Detective, New York City Police Department; Warren A. Steele, Police Officer, New York City Police Department; Thomas Ahearn, Lieutenant, New York City Police Department; Stanley Andron, Sergeant, New York City Police Department; Robert J. McGuire, former Police Commissioner of the City of New York; and Michael Miele, Detective, New York City Police Department; Six Unknown Police Officers, Agents, Servants and Employees of the City of New York, Individually and in their official capacities and the City of New York, Defendants.**

No. 84 CV 3254.

United States District Court, E.D. New York.

June 21, 1985.

Lawrence F. Spirn, Woodbury, N.Y., for plaintiff.

Frederick A.O. Schwarz, Corp. Counsel of the City of N.Y., New York City, Donald J. Kravet, Christopher R. Gette, New York City, of counsel, for defendants.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Plaintiff filed this civil rights action, 42 U.S.C. § 1983, after spending 28 months in prison for a murder he did not commit. He claims the individual defendants, all members of the New York City Police Department, suppressed exculpatory evidence during their investigation of the murder, and that the City of New York fails to train its police officers properly in the gathering and handling of evidence.

Defendants City of New York and Robert McGuire, former City Police Commissioner, moved for dismissal pursuant to Fed.R.Civ.P. 12(b)(6), or, in the alternative, for summary judgment. Fed.R.Civ.P. 56. The motions were referred to Hon. Shira A. Scheindlin, United States Magistrate, for Report and Recommendation. 28 U.S.C. § 636(b)(1)(B); she treated the motions as ones for summary judgment.

After her customary thorough analysis of the issues, Magistrate Scheindlin recommended that both motions be denied, with leave to renew at the completion of discovery. A copy of the Report and Recommendation is attached to this opinion. Defendant City of New York objects to that part of the Report and Recommendation concerning the adequacy of the City's policy for training police officers.

### Discussion

An essential element of a § 1983 plaintiff's claim against a municipality is that the denial of plaintiff's constitutional rights be caused by an official policy or custom of the municipality. *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir.1983). A failure to properly train or supervise police officers may satisfy this requirement if that failure is so severe as to constitute "gross negligence" or "deliberate indifference" to plaintiff's constitutional rights. *Owens v. Haas*, 601 F.2d 1242, 1246 (2d

Cir.), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979).

■ In its objection to the Report and Recommendation, the City has furnished numerous excerpts from the Police Department's Investigators' Guide that instruct detectives in the gathering and handling of evidence. The Court is at a loss to understand why this Guide was not submitted when this motion was filed. Although it provides the Court with a clearer picture of the City's custom and policy than did the exhibits available to Magistrate Scheindlin, I nevertheless conclude the City's objection must be overruled.

The Investigators' Guide, the affidavit of Chief of Detectives Richard Nicastro, and the exhibits thereto, disclose that the City does indeed have an established policy for the gathering and handling of evidence during an investigation. The evidence adduced by plaintiff to date, however, suggests that the investigation leading to plaintiff's conviction was conducted so shoddily as to cast serious doubt on the adequacy of that policy. As Magistrate Scheindlin found, "the alleged failure to train and supervise is sufficiently egregious to be labelled grossly negligent or to warrant a finding of a deliberate indifference to plaintiff's constitutional rights." Report and Recommendation at 11; *see Owens v. Haas, supra.*

Magistrate Scheindlin found, and I agree, that plaintiff has raised triable issues of fact "as to the City's failure either to adopt an adequate policy or to provide adequate training with regard to the handling of exculpatory evidence." Report and Recommendation at 11. Because triable issues of fact exist, defendant's objection to Magistrate Scheindlin's Report and Recommendation is overruled; and the Report and Recommendation is adopted in its entirety.

The parties are directed to continue discovery under the guidance of Magistrate Scheindlin. At the close of discovery, defendants are free to renew the motion for summary judgment. Any such motion, by either party, shall be submitted to Magistrate Scheindlin for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B).

SO ORDERED.

## REPORT AND RECOMMENDATION

### May 14, 1985.

SHIRA A. SCHEINDLIN, United States Magistrate.

### I. PROCEDURAL BACKGROUND

Plaintiff, Nathaniel Carter brings this civil rights action pursuant to 42 U.S.C. § 1983 ("1983"). Plaintiff seeks compensatory damages, punitive damages and reasonable attorney's fees for his wrongful conviction and confinement under color of state law in violation of the Sixth, Eighth and Fourteenth Amendments. This case was referred to me by the Honorable Joseph M. McLaughlin for a Report and Recommendation on defendants' motion pursuant to Fed.R.Civ.P. 12(b)(6) for an order dismissing the complaint against defendants Maguire and the City of New York, or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56.

### II. FACTUAL BACKGROUND

On September 15, 1981, Clarice Herndon was stabbed to death in her home in Cambria Heights, New York. Numerous wounds were inflicted, and the police officers who responded to the scene reported that the interior of her home was covered with blood.[1]

On his way to the scene, defendant Walter Steele, a police officer, observed a black male running down the street whose shirt was covered with blood and whose description did not match that of plaintiff. (¶ 14).[2]

---

1. The facts as stated here are taken from the plaintiff's amended complaint where noted. I take these facts to be true for the purposes of this motion. Where both parties are in agreement as to an occurance, no citation is listed.

2. See pp. 757–758, *infra,* for a discussion of the *Brady* doctrine and § 1983. A recent affidavit submitted by defendants alleges that the supposedly suppressed exculpatory information discovered during the investigation was in fact recorded and delivered to plaintiff's counsel at

Police officers Henry Harrison, William Fredericks and Michael Miele, all named defendants who were investigating the murder under the supervision of defendants Lieutenant Thomas Ahearn and Sergeant Stanley Andron, interviewed a young witness who also saw a black man running down the street near the victim's home soon after the incident. (¶ 15). This man also wore bloody clothes and his description did not match that of plaintiff.

During the investigation of Ms. Herndon's murder, defendant William Fredericks, a detective, interviewed Judith Cooper, a neighbor of the victim. (¶ 17). Ms. Cooper told Detective Fredericks that shortly after the murder, she had heard Delissa Durham, plaintiff's ex-wife and the victim's foster daughter, talking to two men, neither of whom matched plaintiff's description. (¶ 17). Ms. Cooper claimed that she overheard Ms. Durham ask these two men to pick up Nathaniel Carter, Jr., plaintiff's son, from school. (¶ 17). Ms. Cooper then observed the men leaving, presumably to carry out this task. (¶ 17). Soon after the murder, a black male arrived at the local elementary school to pick up Nathaniel Carter, Jr. (¶ 18). At the trial, plaintiff claimed that he did not pick up the child, and that he was in Ossining, New York at the time of the crime. In refuting plaintiff's alibi, the prosecution presented testimony that the black male who picked up Nathaniel Carter, Jr. at the school was the plaintiff. (¶ 18).

Defendant Harrison interviewed Delissa Durham on September 15, 16 and 18, 1981. (¶ 20). On September 18th, Ms. Durham accused the plaintiff of the murder. Defendant Harrison arrested the plaintiff on September 19, 1981, (¶ 20), and on September 23, 1981 a Queens County Grand Jury indicted plaintiff on charges of Second Degree Murder, Third Degree Assault and Three Counts of First Degree burglary. (¶ 12).

At the trial, defendant Harrison testified about his investigation of the crime and the questioning of Ms. Durham. (¶ 21). Plaintiff alleges that certain information concerning Harrison was deliberately not disclosed to Carter's attorneys. This information may have affected Harrison's credibility. (¶ 21)

On June 5, 1982, after a jury trial before Hon. John J. Leahy, plaintiff was convicted of Second Degree Murder for the death of Clarice Herndon. (¶ 12). On September 13, 1982, Justice Leahy sentenced the plaintiff to twenty-five years to life imprisonment. (¶ 12).

After plaintiff was convicted, the Commissioner of the Peekskill Police Department, Walter Kirkland, conducted an independent investigation of the murder. (¶ 25). In late 1982, after uncovering what he thought was substantial evidence that the plaintiff was not involved in the crime, he met with defendants Ahearn and Andron. (¶ 25). Mr. Kirkland urged them to reopen the case, and made the information he had acquired available to them. (¶ 25). They refused and undertook no further investigation. (¶ 25).

Finally, on January 25, 1984, after plaintiff had been incarcerated for twenty-eight months, Delissa Durham admitted under oath in Supreme Court, Queens County that she, not plaintiff, had murdered Ms. Herndon. (¶ 13). She further testified that plaintiff had no involvement in the crime. (¶ 13). On the basis of this testimony and an investigation by the Queens County District Attorney's office and the Legal Aid Society, Justice Leahy granted plaintiff's motion to set aside his conviction and vacated his sentence. (¶ 13).

Plaintiff alleges that the evidence concerning the fleeing males was exculpatory

---

the criminal trial. The affidavit notes that both descriptions of fleeing men were broadcast and recorded on a "Sprint" printout sheet. ¶ 4. This "Sprint" sheet was delivered to plaintiff's counsel. ¶ 5. Therefore, defendant claims that no factual grounds exist on which plaintiff can base his claim of a *Brady* violation for withholding information discovered during the investigation. It should be noted that if plaintiff's counsel did indeed receive the exculpatory evidence prior to trial, in sufficient detail to be useful, there would be no basis for plaintiff's claims.

in nature. (¶ 16). He further claims that he was entitled to production of such evidence prior to his trial. (¶ 16). Moreover, plaintiff asserts that the evidence was deliberately and purposefully suppressed by defendants Harrison, Fredericks, Miele, Steele, Ahearn, Andron and other unknown agents and employees of the City of New York because it was not delivered in useable form to either the District Attorney or to plaintiff before or during the trial. (¶ 16).

Plaintiff also alleges that the statements of Judith Cooper, the neighbor, were exculpatory. The police, therefore, were also required to produce these statements either to plaintiff or to the District Attorney before or during trial and failed to do so. (¶ 19).

In addition, plaintiff claims that defendants City of New York and former Commissioner MaGuire failed to set forth rules and regulations concerning the proper handling of exculpatory evidence. (¶ 23). They also allegedly failed to properly train and supervise the defendant officers to ensure that they followed the proper procedure of recording exculpatory evidence and delivering it to the District Attorney. (¶ 22).

Finally, plaintiff alleges that defendants' investigation of the murder was so inept that it constituted either a reckless disregard for or a deliberate indifference to plaintiff's mental and physical well-being and his right to be free from wrongful confinement, or both. (¶ 24). As a result of the shoddy investigative work, plaintiff claims he suffered severe psychological, physical and personal damages, some of which may be permanent. ¶ 26).

Plaintiff has also brought two pendent state claims against defendants. He alleges that defendants' suppression of and failure to disclose exculpatory evidence and their inept investigation constituted a failure to use reasonable care in performing their official duties, which in turn resulted in plaintiff's wrongful conviction and imprisonment. (¶ 30). He also claims that such activities constitute malicious prosecu-

tion with the intent of procuring plaintiff's conviction despite his innocence. (¶ 33).

## III. DISCUSSION

### A. City's Motion for Summary Judgment

#### 1. Motion to Dismiss May be Treated as a Motion for Summary Judgment.

Defendant City has moved for dismissal pursuant to Fed.R.Civ.P. 12(b)(6) or in the alternative, Fed.R.Civ.P. 56. Because I have considered matters outside the pleadings, the motion is considered as one for summary judgment under Rule 56. *See* Fed.R.Civ.P. 12(b).

To succeed in its summary judgment motion, defendant City has the burden of showing that no genuine issue as to any material fact exists. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). However, the party opposing the summary judgment motion may not rest upon the mere allegations or denials of his pleading. His response must instead set forth specific facts which show that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). In determining whether such an issue exists, the court is constrained to draw all reasonable inferences of fact in favor of the party opposing summary judgment. *Rhoads v. McFerran,* 517 F.2d 66, 68 (2d Cir.1975). The court's role is not to try issues of fact, but "only to determine whether there are issues to be tried." *Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317, 1319–20 (2d Cir.1975).

#### 2. Elements of a § 1983 Claim Against a Municipality

Under *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a plaintiff may recover against a defendant municipality on a § 1983 claim if he can demonstrate that the defendant's "policy or custom" caused his injury. In order to prove municipal liability, the plaintiff in a § 1983 action must show two things: "... first, that the governmental entity maintained or prac-

ticed an unconstitutional or unlawful 'policy' or 'custom' and second that that policy or custom 'caused' or was the 'moving force' behind the violation." *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir.1979), *cert. denied*, 446 U.S. 917, 100 S.Ct. 1850, 64 L.Ed.2d 271 (1980) (citations omitted).

In a more recent case, the Second Circuit held that

to hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.

*Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir.1983).

### 3. Has the Plaintiff Alleged an Official Policy or Custom?

The Second Circuit has stated that an official policy can be inferred "from the omissions of a municipality's supervisory officials, as well as from its acts." *Turpin v. Mailet*, 619 F.2d 196, 201 (2d Cir.), *cert. denied sub nom. Turpin v. City of West Haven*, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980). An official policy resulting from the acquiescence of a municipality, may not ordinarily be inferred from a single incident of illegality. *Id.* at 202. *See also Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir.1983). However, under extraordinary circumstances courts have made an exception to this rule.

In *Owens v. Haas*, 601 F.2d 1242 (2d Cir.), *cert. denied sub nom. Nassau County v. Owens*, 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979), a prisoner brought a § 1983 action against individual prison guards and Nassau County for damages resulting from a beating he received while in custody. The district court dismissed his complaint as to the county because it failed to allege an official policy or pattern of constitutional violations by the county as required by *Monell*. *Owens*, 601 F.2d at 1245. In reversing the dismissal, the Second Circuit laid out the guidelines for § 1983 claims against municipalities that are based on alleged police misconduct.

A municipality may be held liable if its failure to supervise or its lack of a proper training program "was so severe as to reach the level of 'gross negligence' or 'deliberate indifference' to the deprivation of the plaintiff's constitutional rights." *Owens*, 601 F.2d at 1246 (citing *Leite v. City of Providence*, 463 F.Supp. 585, 590–91 (D.R.I.1978)).

Defendant City, however, argues that plaintiff has failed to demonstrate the existence of such a defective policy. It argues that (a) the complaint is lacking in requisite specificity (Defendants' Memorandum at 6–9) and (b) that the alleged failure to supervise is insufficient for finding a municipality liable because plaintiff has not demonstrated that the City's failure to develop a policy as to the presentation and production of exculpatory evidence rises to the level of "gross negligence" or "deliberate disregard." (Defendant's Memorandum at 10–11).

*Batista v. Rodriguez*, is instructive with regard to the City's argument that plaintiff's pleadings lack specificity.

A plaintiff, suing under § 1983, while obligated to make 'a short and plain statement' of the essential elements of his claim in his complaint, Fed.R.C.P. 8(a), is not required to set out the facts in detail. The complaint will survive dismissal 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Conley v. Gibson*, 355 U.S. 41, 45–46 [78 S.Ct. 99, 101–102, 2 L.Ed.2d 80] (1957).

*Batista*, 702 F.2d at 397 (further citations omitted). Here, plaintiff has alleged four specific instances of the suppression of exculpatory information. (Amended Complaint ¶ s 14, 15, 16, 17, 18, 19, 21).

Plaintiff has also submitted an affidavit that tends to support the allegations in the complaint—that the City has failed to adopt an appropriate policy or provide sufficient training with regard to the preservation and production of exculpatory evidence by

individual members of the police force. *See* Affidavit of W.H. Richmond, III, Esq. Viewed in a light most favorable to plaintiff, this affidavit raises a reasonable inference that the specific acts of suppression alleged here are not isolated instances, but rather part of a continuing series, such that a policy or custom may be established.

Drawing all reasonable inferences of fact in favor of the plaintiff, see *Rhoads*, 517 F.2d at 68, plaintiff has set forth sufficient evidence to raise a triable issue of fact as to the City's failure either to adopt an adequate policy or to provide adequate training with regard to the handling of exculpatory evidence as required by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), or both. Here the deliberate suppression of exculpatory material, if proved, resulted in 28 months of wrongful incarceration. Thus, the alleged failure to train and supervise is sufficiently egregious to be labelled "grossly negligent" or to warrant a finding of a "deliberate indifference" to plaintiff's constitutional rights.

### 4. Has the Plaintiff Demonstrated the Requisite Causation?

#### a. The Degree of Negligence

The degree of negligence that plaintiff must plead and eventually prove is problematic. The Supreme Court has noted that

[n]othing in the language of § 1983 or its legislative history limits the statute solely to intentional deprivations of constitutional rights ... Section 1983, unlike its criminal counterpart, 18 U.S.C. § 242, has never been found by this Court to contain a state-of-mind requirement.

*Parratt v. Taylor*, 451 U.S. 527, 534, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). The Court went on to state that earlier case law suggested that

§ 1983 affords a "civil remedy" for deprivations of federally protected rights caused by persons acting under color of state law *without any express requirement of a particular state of mind.*

*Id.* at 535, 101 S.Ct. at 1913 (emphasis added).

There is a dispute in the appellate courts as to the meaning of the *Parratt* decision.[3] It is unclear whether § 1983 requires proof of "gross negligence" or whether a finding of "mere negligence" would be sufficient to sustain a finding of liability. The Second Circuit has not yet ruled on the effect of *Parratt* on § 1983 actions.

Since *Parratt*, the Sixth and Ninth Circuits have held that a showing of mere negligence is sufficient to sustain a cause of action. *Brandon v. Allen*, 719 F.2d 151, 154 (6th Cir.1983), *rev'd on other grounds sub nom. Brandon v. Holt*, — U.S. —, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985) (in § 1983 action against individual defendants alleging assault by police officer, liability based on negligence is sufficient); *Hirst v. Gertzen*, 676 F.2d 1252, 1263 (9th Cir.1982) (in § 1983 claim against municipalities and individual defendants alleging inadequate care of deceased inmate, allegation of mere negligence sufficient in light of *Parratt*). On the other hand, the Fifth Circuit has considered and rejected *Parratt*'s application to municipal liability. *Languirand v. Hayden*, 717 F.2d 220, 227 (5th Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984) (applicable standard is whether municipality's failure to train a police officer properly constituted gross negligence amounting to conscious indifference).

I would follow the view of the Fifth Circuit. A municipality should not be held liable solely upon a showing of mere negligence. As the Fifth Circuit noted, should municipal liability be imposed upon a showing of mere negligence, then

any party who is involved in nothing more than an automobile accident with a state official could allege a constitutional violation under § 1983.

---

**3.** In *Parratt,* the Court eventually reversed summary judgment for the plaintiff on the ground that state tort law provided sufficient alternative means to redress the plaintiff's alleged due process deprivation. Thus the Court's discussion of § 1983 standards of negligence is dictum.

*Languirand,* 717 F.2d at 224 n. 6 (quoting *Parratt,* 451 U.S. at 544, 101 S.Ct. at 1917). Thus, plaintiff must make a showing that the City's alleged failure to adopt an adequate *Brady* policy [4] and to train its employees in their *Brady* obligations was an omission that amounted to gross negligence or deliberate indifference to plaintiff's constitutional rights.

### b. Proof of Causation

The City argues that it did not and could not have failed to establish a policy regarding the preservation of exculpatory evidence because the Police Department has a written policy which requires that *all* relevant evidence be recorded. Defendant's Memorandum at 10. The City next argues that because plaintiff's complaint alleges that the individual defendants "deliberately and purposefully" suppressed exculpatory evidence, the City's policy could not have caused the illegal conduct. Defendant's Supplemental Memorandum at 4. The City further argues that "[d]ecisions as to whether evidence is exculpatory are too speculative to to be realistically made during an investigation." Defendant's Reply Memorandum at 3. It is the City's view that a police officer not versed in the law cannot differentiate exculpatory from other types of evidence, and it is therefore too burdensome to require the separate recording of exculpatory evidence. Finally, the City argues that because the allegedly withheld exculpatory evidence was uncovered before plaintiff was a suspect, *a fortiori* the evidence was not "exculpatory" as

to plaintiff. (Defendant's Letter Memorandum of Feb. 20, 1985).

The City's reliance on the written guidelines is misplaced. Sections of the "Detectives Guide" cited in the affidavit of Richard J. Nicastro, Chief of Detectives, New York City Police Department, do not require that all evidence be recorded, merely all "relevant evidence." *See* § 205–1 ("record relevant statements made by suspects and witnesses"). The recording of "all relevant evidence" does not accomplish the goal of recording and preserving exculpatory evidence. A police officer investigating a crime is likely to assume that relevant evidence includes only inculpatory information.

In answer to defendant's next argument, it is my view that "deliberate and purposeful" suppression of the exculpatory evidence would not preclude a finding that a policy of defendant City caused plaintiff's injuries. Plaintiff points out that "[t]he evidence might ultimately reveal that the officers knew of the existence of the exculpatory evidence and failed to disclose it because they were unaware of their constitutional obligation to do so." Plaintiff's Supplemental Memorandum at 4.

It is unclear from the papers before the court whether the allegedly exculpatory information discovered during the investigation was recorded. If it was, then the defendant officers had a duty to turn it over to the district attorney prior to trial.[5] If it was not recorded, a duty to disclose

---

**4.** *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), held
> that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

*Id.* at 87, 83 S.Ct. at 1196–97.

**5.** There is little doubt that police officers have a *Brady* obligation to disclose exculpatory information. *Freeman v. Georgia,* 599 F.2d 65, 68–69 (5th Cir.1979), *cert. denied,* 444 U.S. 1013, 100 S.Ct. 661, 62 L.Ed.2d 641 (1980); *United States v. Butler,* 567 F.2d 885, 890 (9th Cir.1978); *United States v. Bryant,* 439 F.2d 642, 647–48 (D.C. Cir.1971); *Barbee v. Warden,* 331 F.2d 842, 845

(4th Cir.1964). Chief Judge Weinstein of the Eastern District of New York wrote, in the context of a habeas corpus petition, that
> [t]he Second Circuit rule is that information in the hands of someone who can be viewed as "the arm of the prosecutor" triggers the application of the *Brady* requirement of disclosure.

*Pina v. Henderson,* 586 F.Supp. 1452, 1456 (E.D. N.Y.1984) (citations omitted). In any case, defendant City apparently concedes this point by citing *Hauptmann v. Wilentz,* 570 F.Supp. 351, 389 (D.N.J.1983) for the proposition that the *Brady* disclosure duty falls on the state as a whole. Defendant's Supplemental Memorandum at 12.

the information might still have arisen if, for example, the officers continued to assist in the investigation or testified at trial.

The answer to the City's argument concerning the speculative nature of classifying evidence is obvious. If the City trained its police officers as to the preservation and disclosure of *Brady* material, officers investigating a crime would not be forced to speculate on the exculpatory nature of such evidence. It is precisely the thrust of plaintiff's argument that had they been so trained, the evidence in question here would have been disclosed. The allegedly suppressed exculpatory evidence in this case is not highly technical, and police officers need not be versed in the law to know, for example, that the observation of another possible suspect fleeing the crime scene tends to exculpate a defendant. A police officer should not be excused for failing to report exculpatory evidence merely because he did not immediately recognize its exculpatory nature.[6]

Finally, if all evidence is gathered and recorded, the exculpatory nature of a certain portion becomes evident when the police focus on a particular suspect. It is at that point that the police officer has a duty to bring to the attention of his superiors or the prosecutor any evidence that might exculpate the defendant.

While the Second Circuit has not spoken on the issue, there is authority which holds that a *Brady* violation states a cause of action under § 1983. *McDonald v. State of Illinois,* 557 F.2d 596, 603 (7th Cir.), *cert. denied,* 434 U.S. 966, 98 S.Ct. 508, 54 L.Ed.2d 453 (1977) (plaintiff wrongfully convicted of homicide has § 1983 claim for *Brady* violation where government or agents frustrate his attempts to preserve possibly exculpatory information); *Hilli-*

*ard v. Williams,* 516 F.2d 1344, 1351 (6th Cir.1975), *vacated on other grounds,* 424 U.S. 961, 96 S.Ct. 1453, 47 L.Ed.2d 729 (1976) (plaintiff wrongfully convicted of homicide had § 1983 claim for withholding of exculpatory evidence in violation of *Brady* ).[7] In accord is a recent case, *Lopez v. Ruhl,* 584 F.Supp. 639, 646 (W.D.Mich. 1984), where a § 1983 claim survived against an officer who withheld exculpatory information from the prosecutor, court and defendant.

Defendant City has cited one authority to the contrary. In *Fulford v. Klein,* 529 F.2d 377 (5th Cir.1976), *aff'd en banc,* 550 F.2d 342 (5th Cir.1977), the court noted that *"Brady* did not create any cause of action independent of the validity of the conviction." *Id.* at 381. *Fulford,* however, is distinguishable. There, plaintiff brought his § 1983 claim while his conviction was still valid. Thus the court found that any § 1983 claim plaintiff might have had was not properly before the court. *Id.* at 382. Here, to the contrary, plaintiff has been exonerated of the criminal charges.

The City also asserts that *Brady* rights, like *Miranda* rights, are not specifically guaranteed by the Constitution and that an action in damages therefore cannot lie under *Brady.* Defendant's Supplemental Memorandum at 10–11. However, the similarity between *Miranda* and *Brady* does not extend to the application of remedies. *Miranda* violations can be cured by the exclusion of unlawfully obtained incriminating statements. In the case of a *Brady* violation, wrongfully suppressed evidence may not even be discovered by the defense until after a trial, conviction and, as here, wrongful incarceration.

---

**6.** Moreover, the City's arguments concerning the practical consequences of imposing *Brady* duties on investigating officers do not apply to one of plaintiff's alleged acts of suppression. Plaintiff alleges that certain information concerning the defendant Harrison, a trial witness, was not disclosed to the defense. This information may have affected Harrison's credibility. Amended Complaint ¶ 21. Defendant cannot argue that the decision to disclose such informa-

tion imposed any burden on or need for speculation by defendant officers.

**7.** On remand from the Supreme Court, the Sixth Circuit vacated its judgment against defendant prosecutor on immunity grounds, but allowed plaintiff's judgment against the individual police officer to remain in effect. *Hilliard v. Williams,* 540 F.2d 220, 221–22 (6th Cir.1976).

In light of *McDonald* and *Hilliard*, then, I find that a violation of a plaintiff's *Brady* rights is sufficient to state a cause of action under § 1983. Plaintiff here alleges specific instances of the withholding of exculpatory evidence. Plaintiff's Amended Complaint ¶¶ 14, 15, 16, 17, 19, 21. These detailed allegations set forth several violations of *Brady*.

In sum, plaintiff has successfully shown that there are genuine issues of fact that must be resolved at trial. The Second Circuit recently articulated the applicable standard in the form of a warning:

> While 'mere conclusory allegations or denials' are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case, ... *caution should be exercised in granting summary judgment* where state of mind is in issue *or when the party opposing the motion has been denied relevant discovery.*

*Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983) (emphasis added) (citations omitted).

Plaintiff has alleged that material, exculpatory evidence was suppressed in not one, but rather in four instances. Plaintiff has further demonstrated that the City may well have failed to adopt an adequate policy regarding the preservation and production of exculpatory evidence. There is no doubt that such a failure, if it existed, constitutes gross negligence because of its potentially egregious consequences. *See e.g., Daniels v. Miele*, 83 CV 683 (CPS) (E.D.N.Y.) (failure to produce exculpatory evidence resulted in approximately four years incarceration); Affidavit of Warren Richmond, Esq. dated December 7, 1984 (Police Department Lieutenant testified at deposition that he would not routinely report all witness identifications made at a lineup). Finally, plaintiff has demonstrated a causal connection between the alleged suppression of exculpatory evidence and plaintiff's wrongful conviction and incarceration.

Therefore, I respectfully recommend that the City's motion for summary judgment be denied at this time and that the parties complete their discovery. The City may then renew its motions.

**B. The Summary Judgment Motion by Defendant McGuire**

**1. Elements of § 1983 Claim Against Supervisory Official**

The standard for holding a supervisory official liable under § 1983 for violating a plaintiff's constitutional rights was set forth in *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.), *cert. denied sub nom. Employee-Officer John v. Johnson*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973):

> When monetary damages are sought under § 1983, the general doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of the defendant is required.

*Id. See also, McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978); *Duchesne v. Sugarman*, 566 F.2d 817, 830 (2d Cir.1977).

Even though a city official may not be held liable under the theory of respondeat superior, the Court stated in *Monell* that an official could be held liable, just as a municipality could be, if a causal link existed between the execution of official policy and the constitutional violation. *See Monell*, 436 U.S. at 691–92, 98 S.Ct. at 2036–37.

In a recent § 1983 action, a plaintiff sued the City of Atlanta and the Commissioner of Public Safety for the use of excessive force resulting in an arrestee's death. *See McQurter v. Atlanta*, 572 F.Supp. 1401, 1419 (N.D.Ga.1983), *appeal dismissed*, 724 F.2d 881 (11th Cir.1984). Because the court found that defendants Public Service Commissioner and City failed to ensure proper training of supervisory police officers in the use of deadly force, they were held liable for the arrestee's death. *Id.* at 1421.

The court in *McQurter* also stated that where the plaintiff alleges a failure to train or supervise as the basis for a § 1983 claim, the failure of the supervisory official

must rise to the level of "gross negligence" or "recklessness." *McQurter* at 1420. *See also Owens v. Haas,* 601 F.2d at 1246. In order to survive the summary judgment motion, therefore, the opposing party

> must bring forth specific facts through affidavits, pleadings, depositions, answers to interrogatories, admissions on file or other reliable means to show that a genuine issue of material fact exists.

*Harlee v. Hagen,* 538 F.Supp. 389, 393 (E.D.N.Y.1982). *See also Perma Research and Development Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir.1969). Thus plaintiff must set forth facts to show that there is a genuine issue of fact as to former Commissioner McGuire's "gross negligence" or "deliberate indifference" in failing to train or supervise officers of the New York City Police Department.

### 2. Discussion

In support of his instant motion, former Commissioner McGuire argues that plaintiff has failed to allege the Commissioner's personal involvement in either the Herndon investigation or the conduct of the defendant police officers. Defendant's Memorandum at 3. McGuire further claims that his liability cannot be based on a respondeat superior theory, or solely on his position as police commissioner. *Id.* at 3–4. He also asserts that plaintiff has failed to allege the Commissioner's personal involvement in the police department's training program, and that the present departmental guidelines properly require the preservation of all information discovered during an investigation. Defendant's Reply Memorandum at 5. Finally, defendant McGuire notes that plaintiff has failed to allege either gross negligence or deliberate indifference on his part, an allegation essential to pleading a prima facie § 1983 case against a supervisory official. Defendant's Memorandum at 4–5.

Defendant McGuire has not met his burden. The reasoning applied in *McQurter* is applicable here. While it is true that plain-tiff alleges no personal involvement by McGuire in either the Herndon investigation or the department's training program, plaintiff does allege that McGuire was directly responsible for the Department's failure to train the defendant police officers as to the preservation and production of exculpatory evidence. Plaintiff's Memorandum at 18. It is also alleged that his omissions rise to the level of "reckless disregard" or "deliberate indifference" with regard to violations of plaintiff's constitutional rights. Amended Complaint ¶¶ 24, 19.

I find that the plaintiff has sufficiently alleged McGuire's responsibility for the alleged constitutional violation. Because I have found that genuine issues of fact exist as to the City's liability in this action, and because defendant McGuire was directly responsible for the formation of police department policy at the time of the incident, I am compelled to conclude that the claim against him should survive this motion. A municipality and its officials are necessarily linked when potential liability is based on a failure in policy.[8] Accordingly, I respectfully recommend that the motion for summary judgment by defendant McGuire be denied. The parties should complete their discovery at which time defendant McGuire may renew this motion.

### C. Plaintiff's Pendent State Claims

Because plaintiff has alleged a § 1983 claim, I need not decide the issue of pendent party jurisdiction.

> The Second Circuit has held that
>
> [t]he test for determining whether a court having jurisdiction over a federal claim may properly assume jurisdiction over a pendent state claim is whether the claims derive from a common nucleus of operative fact. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725–27 [86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218] (1966).

*Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10,* 605 F.2d 1228, 1247 (2d Cir.1979), *cert. denied,* 446

---

**8.** Research has revealed no instance of a Police Commissioner being dismissed from a lawsuit prior to trial when a municipality is required to proceed.

U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980). The allegations of the instant case meet this test. The defendant City has raised no argument to the contrary.

Pendent jurisdiction is a matter of discretion. *Lefrak v. Arabian Oil Co.*, 487 F.Supp. 808, 825 (E.D.N.Y.1980). Considering the interrelated nature of the claims, judicial economy and fairness to the litigants, I recommend that the plaintiff's state claims that allege negligent failure of officials to carry out their duties and malicious prosecution should remain before this court.

## IV. CONCLUSION

Because plaintiff has sufficiently alleged that the City failed to adopt an adequate policy with regard to the preservation and production of exculpatory evidence and that this failure caused the suppression of evidence and led to plaintiff's wrongful incarceration, I respectfully recommend that the City's motion for summary judgment be denied. Because plaintiff has sufficiently alleged that Commissioner McGuire was directly responsible for the formation of police department policy at the time the evidence was allegedly suppressed, I also recommend that his motion for summary judgment be denied. In addition, I respectfully recommend that this court retain jurisdiction over plaintiff's pendent state claims.

A copy of this Report and Recommendation is being mailed today to all parties, who are hereby advised that objections to the report may be served and filed with the district court, with a copy to me, within ten (10) days.