**Richard Anthony HEISLER, Plaintiff,**

**v.**

**Sheriff KRALIK; Lieut. Conjura; Sergeant Schonlieber; Sergeant Clahasse; Officer John Doe # 1; Officer John Doe # 2; Officer John Doe # 3; Officer Beck; Officer Sherman; Officer Brooks; Rockland County Jail; and Rockland County Sheriff Dept., Defendants.**

No. 94 CIV. 2243(DLC).

United States District Court,
S.D. New York.

Oct. 29, 1997.

Richard Anthony Heisler, Dannemora, NY, Pro Se.

Jeffrey S. Rovins, New York, NY, for Defendants.

## OPINION & ORDER

COTE, District Judge.

On March 30, 1994, Richard Anthony Heisler ("Heisler") filed this action *pro se* pursuant to Section 1983 of Title 42, United States Code, alleging that the defendants Rockland County, its Sheriff's Department, the Medical Department at its County Jail (referred to herein as the Rockland County Correctional Center or "RCCC") and various individual officers at the RCCC were, among other things, deliberately indifferent to his safety and medical needs. The Judge to whom this case was then assigned referred the case to Magistrate Judge James C. Francis IV for general pretrial supervision and the preparation of a Report and Recommendation ("Report") on any motion for summary judgment. Such a motion was made on November 22, 1996 and on April 17, 1997, the Report was issued recommending that the motion be granted in part. The defendants and plaintiff have filed timely objections to the Report. For the reasons given below, the Report is accepted.

### Background

Prior to being transferred to the RCCC on May 3, 1993, Heisler was held at the Bergen County Jail in the custody of the Orangetown Police. Apparently Heisler was charged with sexual assault of a minor and feared that he would be harmed by other prisoners. He understood that Bergen County Sheriff Terhune had contacted Rockland County Sheriff Kralik to advise him of the need for extra security for Heisler. He understood also that Orangetown Detective Toth had telephoned the RCCC to inquire as to whether Heisler would be housed in protective custody.

On May 9, 1993, six days after his transfer to the RCCC, Heisler was assaulted by another inmate and suffered contusions and swelling. After the assault, Heisler was placed in protective custody, where he remained until his transfer to state custody on September 17, 1993. Heisler alleges principally that the defendants knew of the risk of such an assault and did nothing to prevent it, that officers witnessed the actual assault but did nothing to stop it, that he was not given adequate pain medication following the assault, and that while he was held in protective custody some officers denied him access to showers, recreation, the law library, and the telephone to call his attorney.

### The Report

The Report recommended that the motion by defendants Acuna, DeGroat and Makara for summary judgment on the claim that they failed to prevent the attack as it was occurring be denied, finding that there are disputed issues of material fact as to whether they ignored Heisler's cries for help, did nothing to stop the assault, and permitted the assailant to reenter Heisler's cell to continue the assault. The Report further recommended dismissal of the claim that Rockland County, its Sheriff's Department and the Sheriff failed to supervise or train the Department's officers since this claim was based on a single incident. It recommended against granting the motion for summary judgment against these same three defendants on the claim that they had failed to protect the plaintiff, however, because it found that there were disputed issues of fact as to whether the Sheriff had been personally advised as to the danger to the plaintiff and had failed to act on that warning.

The Report recommended that all of the claims based on inadequate medical care be dismissed since the injuries were not sufficiently serious to warrant constitutional protection. The only physical injuries suffered by the plaintiff were contusions, none of which required follow-up care or medication beyond motrin or advil for the immediate pain.

Heisler has also alleged that after the attack defendant Kardian, one of the officers in the RCCC, denied him access to outdoor recreation, prevented him from using shower facilities and from cleaning his cell, denied him access to the law library and legal materials, and prevented him from making telephone calls to his attorney. Finding that Kardian offered no evidence to dispute this allegation, but had relied instead solely on the argument that Heisler had failed to state a claim, the Report recommended that the motion to dismiss the claims regarding the conditions of confinement be denied. As to the claims based on lack of access to the courts, however, the Report recommended dismissal.

The Report also recommended dismissal of the claims against several of the other individual defendants. It recommended dismissal of the claim that defendant Sherman had refused to allow Heisler to contact his attorney on a single occasion. Heisler also alleges that, while in protective custody following the attack, defendant Schoenleber denied him access to a telephone and television and prevented him from purchasing a radio and cigarettes in the RCCC commissary. The Report recommended dismissal of these allegations for failure to state a claim. Heisler alleges that defendant Conjura did not permit him to have contact visits for a period of time. Given the defendant's unrebutted evidence that this restriction was imposed for the plaintiff's safety, the Report recommended that this allegation be dismissed. As to the claims against defendants Acuna, Brooks and Beck that they had informed certain inmates about the charges against Heisler after Heisler was in protective custody, the Report recommended dismissal for failure to allege any injury suffered as a result of these actions.

Turning to Heisler's Section 1985(3) claim, the Report recommended dismissal for, among other reasons, failure to identify Heisler's membership in a particular class of persons whose rights are protected by that Section. The Report recommended dismissal of the state law claims for failure to file a notice of claim pursuant to the New York statutory scheme which requires notice before suing a municipality or its agents in tort.

The Report recommended denial of the claim of qualified immunity since it had been clearly established prior to May 1993 that prison officials violate a pretrial detainee's due process right to be free from punishment when they fail to protect him from known risks posed by other inmates. *Morales v. New York State Dep't of Corrections*, 842 F.2d 27, 30 (2d Cir.1988). Similarly, the Report found that the right to be free from arbitrary and purposeless restrictions, such as restrictions on showers, outdoor recreation, and cell cleaning privileges, was well established by May 1993. *Bell v. Wolfish*, 441 U.S. 520, 539, 99 S.Ct. 1861, 1874, 60 L.Ed.2d 447 (1979).

### Standard of Review

■ A court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). *See* Fed.R.Civ.P. 72(b). A court may accept those findings to which no specific written objection is made as long as those findings are not clearly erroneous. *See Greene v. WCI Holdings Corp.*, 956 F.Supp. 509, 513 (S.D.N.Y.1997); *Pizarro v. Bartlett*, 776 F.Supp. 815, 817 (S.D.N.Y. 1991). A *de novo* review must be conducted of those issues to which a specific written objection has been made. Fed.R.Civ.P. 72(b). *See Greene*, 956 F.Supp. at 513.

### Discussion

*Defendants' Objections*

1. *Defendants Acuna, DeGroat and Makara*

■ The defendants contend that Heisler's claims based on the guards' failure to protect him should be dismissed since it is undisputed that he sustained no serious physical injury from the assault by a fellow inmate. It is well established that the Eighth Amendment imposes on prison officials the duty to protect inmates from violence at the hands of other inmates.[1] *See,*

---

1. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994), discusses the standard for violations under the Eighth Amendment, which does not apply to

e.g., *Fischl v. Armitage*, 96–2852, 1997 WL 619821 at \*5 (2d Cir. Oct. 9, 1997).

 The Supreme Court has articulated a two part test for determining whether an inmate has suffered an injury of constitutional magnitude. *See Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994). First, there is an objective component which,

> [f]or a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a *substantial risk of serious harm.*

*Id.* (emphasis supplied). Second, there is a subjective component requiring that the prison official have a "sufficiently culpable state of mind," to wit, be deliberately indifferent to the harmful conditions. *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991). In *Farmer*, the Court rejected an objective test for a defendant's deliberate indifference, and held instead

> that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official *knows of and disregards an excessive risk to inmate health or safety;* the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979 (emphasis supplied).

 It is the first prong of the test that is of principal concern here. While "not every injury suffered by one prisoner at the hands of another ... translates into constitutional liability," *id.* at 834, 114 S.Ct. at 1977,

the Court does not accept defendants' position that prison officials are only liable for failing to protect an inmate from an attack by another inmate when a serious physical injury has resulted from the attack.[2] If accepted, such an analysis would assess a prison official's actions based on hindsight, rather than on the facts and circumstances of which the official was aware at the time he acted or failed to act. Prison officials are not required to be prescient, but only to act reasonably in response to the conditions of which they are aware. The position urged by the defendants would undermine the *Farmer* Court's holding that conditions posing a "substantial risk" of serious harm violate the Eighth Amendment when prison officials are deliberately indifferent to those conditions. The *Farmer* Court reasoned that

> [h]aving incarcerated 'persons [with] demonstrated proclivit[ies] for antisocial criminal and often violent, conduct,' having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course.

*Id.* at 833, 114 S.Ct. at 1977 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1983)). As a consequence, the Court in *Farmer* recognized that injunctions against unsafe and life-threatening conditions in prisons may be appropriate even when nothing has yet happened.

> A subjective approach to deliberate indifference does not require a prisoner seeking "a remedy for unsafe conditions [to] await a tragic event [such as an] actua[l] assault[t] before obtaining relief."

---

pretrial detainees like the plaintiff. Judge Francis, however, correctly found that the plaintiff's Due Process rights under the Fourteenth Amendment are "at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983) (citations omitted). *See Hayes v. New York City Dept. of Corrections*, 91 Civ. 4333, 1995 WL 495633 at \*5 (S.D.N.Y. Aug. 21, 1995).

**2.** The Supreme Court has specifically rejected the serious injury test in cases involving exces-

sive force used by prison guards. While excessive force cases also arise from the Eighth Amendment's prohibition on "cruel and unusual punishments," because society's expectations are different whenever prison officials maliciously or sadistically use force to cause harm, such claims are evaluated in a different way than cases involving conditions of confinement. *See Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992); *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir.1994).

*Id.* at 845, 114 S.Ct. at 1983 (quoting *Helling v. McKinney,* 509 U.S. 25, 33, 113 S.Ct. 2475, 2480–81, 125 L.Ed.2d 22 (1993)).

 In sum, prison officials have a constitutional duty to act reasonably to ensure a safe environment for a prisoner when they are aware that there is a significant risk of serious injury to that prisoner. The failure to do so violates that prisoner's rights, whether or not an attack actually occurs, and if it does occur, whether or not the injuries suffered in an attack are serious. In assessing whether the risk of an inmate's violence against other inmates is "sufficiently serious," *Wilson,* 501 U.S. at 298, 111 S.Ct. at 2324, to trigger constitutional protection, the focus of inquiry must be, not the extent of the physical injuries sustained in an attack, but rather the existence of a "substantial risk of serious harm." As the Seventh Circuit observed recently, an inmate may bring a Section 1983 action for damages in the absence of any physical attack if the inmate has suffered "extreme and officially sanctioned psychological harm" from living in fear of attack. *Doe v. Welborn,* 110 F.3d 520, 524 (7th Cir.1997).[3]

 Drawing on the jurisprudence developed in the context of a deprivation of medical care, defendants contend that the inmate must have suffered a serious physical injury to state an Eighth Amendment claim. In *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Id.* at 104, 97 S.Ct. at 291 (internal citation omitted). Even in the context of the denial of medical treatment to inmates, however, it is well established that prison officials may not be deliberately indifferent to health conditions of prisoners that pose a substantial risk of future, serious medical problems. *See, e.g., Helling,* 509 U.S. at 34, 113 S.Ct. at 2481 (prisoner allowed to prove

in a suit that exposure to environmental tobacco smoke is an unreasonable danger to his health); *Koehl v. Dalsheim,* 85 F.3d 86, 88 (2d Cir.1996) (prisoner allowed to maintain suit for damages for failure to provide him with eye-glasses due to risk of serious injury without them). In *Helling,* the Supreme Court specifically "reject[ed] the petitioners' central thesis that only deliberate indifference to *current* serious health problems of inmates is actionable." *Helling,* 509 U.S. at 34, 113 S.Ct. at 2481 (emphasis supplied).

 In the instant action, Heisler alleges that the defendants failed to intercede to stop an ongoing attack. According to the plaintiff, when he returned to his cell on May 9, 1993, his assailant followed him into his cell within view of the defendants and proceeded to beat the plaintiff. The assailant then left and upon returning attempted to stab the plaintiff. The plaintiff suffered swelling and contusions. According to the plaintiff, it was only fortuitous that he did not suffer far more serious injuries. These allegations are sufficient to raise a question of fact as to whether a "substantial risk of serious harm" existed. As for the subjective component of an Eighth Amendment violation, the defendants do not object to—and I find no clear error in—the Report's finding that material issues of fact exist as to whether defendants Acuna, DeGroat and Makara were deliberately indifferent to plaintiff's rights by failing to intervene to stop the attack. Thus, denial of summary judgment is appropriate.

### 2. *Defendant Kralik*

According to the defendants, the plaintiff has relied solely on hearsay to establish that they were notified of the danger to Heisler's safety. Heisler reports that Bergen County Sheriff Terhune told Heisler that he had sent a fax to Sheriff Kralik to advise him that Heisler should be placed in a protected environment. Through an affidavit, the

---

**3.** Section 1997e(e) of the Prison Litigation Reform Act of 1995 ("PLRA"), enacted on April 26, 1996, bars an inmate's claims for damages based purely on mental and emotional distress. 42 U.S.C. § 1997e(e). As Section 1997e(e) makes a substantive change to the law, it does not apply retroactively to cases, such as this one, which were filed before the enactment of PLRA. *See Covino v. Reopel,* 89 F.3d 105, 107 (2d Cir.1996); *Harris v. Lord,* 957 F.Supp. 471, 474 (S.D.N.Y. 1997). In any event, Heisler does not claim damages solely for emotional distress.

plaintiff's mother testifies that prior to the plaintiff's transfer to the RCCC, Ms. Anna Baldino of Sheriff Terhune's office advised her that Sheriff Kralik would be contacted shortly about her son's safety. Heisler's mother further testifies that after the attack, Ms. Baldino expressed shock to her and stated:

> We communicated with Sheriff Kralik and asked him to address the need for added safety and security for Richard Heisler. I will call up there immediately to find out what happened.

Heisler also submitted answers to interrogatories from Ms. Baldino which arguably support some of Mrs. Heisler's recollection. Finally, Heisler reports that Detective Toth of the Orangetown Police told him that he would telephone the Rockland County Sheriff's Department to advise it that the plaintiff desired to be placed into protective custody; it appeared to Heisler that Detective Toth made that call in his presence.

 The defendants are correct that some of the evidence on which the plaintiff relies is hearsay. Ms. Baldino's answers to the interrogatories and Heisler's observations of the Toth telephone call, however, provide a sufficient basis to find that there are disputed issues of fact here. I note, moreover, that despite the hurdles to conducting litigation *pro se,* the plaintiff has made specific allegations about the warnings given to the RCCC and presented non-hearsay evidence to substantiate those claims. In these circumstances, I adopt the recommendation that summary judgment on this claim be denied. At trial, Heisler will be permitted to subpoena Detective Toth, Sheriff Kralik, Sheriff Terhune and Ms. Baldino should he desire to do so.

Accepting for purposes of this argument that they received a warning, the defendants argue that the warning did not create a duty since it could only have reflected the plaintiff's own fears or the experience in a Bergen County facility and could not have been a basis for predicting experience in RCCC. This argument entirely misses the point.

The danger to Heisler stemmed from the nature of the crime he had committed and the likelihood of how any inmate population would react to knowledge of that crime. There is nothing to suggest that the defendants had a basis to believe that the inmates in RCCC were indifferent to these matters. In any event, these are issues of fact properly decided at trial.

### 3. *Defendant Kardian*

 As to the claims against defendant Kardian regarding his interference with Heisler's access to showers and recreation and with his ability to clean his cell, the defendant interposes both legal and factual arguments. As to the factual arguments, the defendant chose not to present evidence to Judge Francis in support of this prong of his motion and has thereby waived his right to do so now. Reviewing the legal arguments *de novo,* and liberally construing plaintiff's *pro se* complaint, plaintiff's allegations state a claim that the conditions of his confinement amounted to "punishment." *See Bell,* 441 U.S. at 539, 99 S.Ct. at 1874. Conditions of confinement violate the Eighth Amendment [4] when they deprive an inmate of the "minimal civilized measure of life's necessities" evaluated under a "contemporary standard of decency." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). *See Blissett v. Coughlin,* 66 F.3d 531, 537 (2d Cir.1995). In his complaint, plaintiff alleges that

> Officer Kardian denied me everything possible pertaining to minimum standards while I was in protective custody, i.e. showers, legal phone calls, regular phone calls, cell-clean up, outdoor recreation, access to the law library, legal materials and so much more.

Defendant Kardian argues that plaintiff has not provided any evidence of the number of times these deprivations occurred. Taking plaintiff's allegations as true, as the Court must do with a motion to dismiss, these deprivations occurred every time that Kardian was on duty during the approximately

---

**4.** As discussed above, while this case involves a pretrial detainee and thus is based upon the Due Process Clause of the Fourteenth Amendment, Eighth Amendment "cruel and unusual punishments" cases are instructive.

four months plaintiff was in protective custody. As the defendant has relied solely on the argument that plaintiff's allegations in his *pro se* complaint fail to state a claim. I adopt the Report's recommendation that dismissal of this claim is inappropriate.

### 4. *Qualified Immunity*

 Defendants object to the Report's finding that they are not entitled to qualified immunity on the claims that (1) they ignored the substantial risk to Heisler's safety and (2) defendant Kardian's actions amounted to proscribed arbitrary and purposeless restrictions. A public official is entitled to qualified immunity if his conduct did not violate a clearly established federal statutory or constitutional right or if it was objectively reasonable for the official to believe that his acts did not violate those rights. *See, e.g., Brown v. City of Oneonta, N.Y., Police Dept.,* 106 F.3d 1125, 1130-31 (2d Cir. 1997). To determine whether a right was clearly established, the court

> consider[s] "(1)whether the right in question was defined with 'reasonable specificity,' (2)whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question, and (3) whether under preexisting law a reasonable defendant would have understood that his or her acts were unlawful."

*Id.* at 1131 (quoting *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992)). The Second Circuit has held that

> [a] court need not have passed on the identical course of conduct in order for its illegality to be "clearly established"; however, "in the light of pre-existing law the unlawfulness must be apparent."

*Williams v. Greifinger,* 97 F.3d 699, 703 (2d Cir.1996) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)).

 The defendants contend that even if Sheriff Kralik and the Sheriff's Department were warned about the existence of a substantial risk of danger to Heisler, they are entitled to qualified immunity since prior to May 1993, the time of the assault, the law

only recognized a duty to protect where there was a pre-existing incident or conduct that created a risk to an inmate. Among other cases, the defendants rely on *Ayers v. Coughlin,* 780 F.2d 205 (2d Cir.1985) (Per Curiam), which held that the "failure of custodial officers to employ reasonable measures to protect an inmate from violence by other prison residents" is a violation of the Eighth Amendment where the officers act with intentional or reckless disregard of the danger. *Id.* at 209. The plaintiff in *Ayers* alleged that the correctional officers had knowledge of threats; there was no allegation in *Ayers* that there had been a prior incident or threatening conduct. While the threats alleged in *Ayers* arguably present a more concrete threat than that alleged here, *Ayers* did not turn on that fact. Rather, the Second Circuit held that summary judgment was improper where there was evidence of intentional or reckless disregard of a risk of harm. *Id.* Thus, it was clearly established at the time of the incident here that, intentional or reckless failure to take reasonable measures to protect a prisoner from threatened violence, even in the absence of a prior act of violence directed at that inmate, can create liability.

Defendants further contend that defendants Acuna, DeGroat and Makara are entitled to qualified immunity because it was not clearly established at the time of the attack that defendants were required to protect an inmate in their custody when an assault does not cause serious physical injury. The Second Circuit had held by May 1993, however, that prison officials had a duty to protect inmates from the *risk* of serious injury at the hands of other inmates. *See, e.g. Morales,* 842 F.2d at 30; *Ayers,* 780 F.2d at 209.

 Finally, defendant Kardian contends that he is entitled to qualified immunity because the rights which the plaintiff alleges he violated were not clearly established in May 1993. The Supreme Court, however, had held in 1979 that purposeless restrictions can constitute impermissible punishment when imposed upon detainees. *See Bell,* 441 U.S. at 539, 99 S.Ct. at 1874.

*Plaintiff's Objections*

 Plaintiff argues that the Report erred in recommending dismissal of his claim regarding access to the courts. The Report found that the plaintiff had failed to allege any prejudice stemming from a denial of access to the law library and legal materials. To state a claim for lack of access to the courts, the plaintiff must allege that the denial of access proximately caused some prejudice to a legal claim. *See, e.g., Lewis v. Casey,* —— U.S. ——, ——, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996); *Ramirez v. Holmes,* 921 F.Supp. 204, 207 (S.D.N.Y.1996); *Smith v. O'Connor,* 901 F.Supp. 644, 649 (S.D.N.Y.1995). The plaintiff's only allegation of prejudice is that he pled guilty against the advice of counsel to escape the conditions he experienced at the RCCC while in protective custody. Plaintiff does not explain how access to the law library would have changed that result. Thus, I adopt the Report's conclusion that this claim should be dismissed.

 Plaintiff also contends that Judge Francis should have appointed counsel to assist him in this case. In determining whether to grant a request for counsel, the Court must consider

> the merits of plaintiff's case, the plaintiff's ability to pay for private counsel, his efforts to obtain a lawyer, the availability of counsel, and the plaintiff's ability to gather the facts and deal with the issues if unassisted by counsel.

*Cooper v. A. Sargenti Co., Inc.,* 877 F.2d 170, 172 (2d Cir.1989). As a threshold matter, the plaintiff must demonstrate that his claim has substance or a likelihood of success in order for the Court to grant a request for counsel. *See Hodge v. Police Officers,* 802 F.2d 58 (2d Cir.1986). I find that plaintiff has now shown that his claim has sufficient substance to warrant granting his request for counsel. As a consequence, the Court will request that the Southern District's Pro Se Office seek volunteer counsel to assist plaintiff in pursuing this action.

*Unobjected to Recommendations*

The Report recommends dismissing the claim against Rockland County and its Sheriff's Department that they had failed to train their employees, but retaining the claim that these two defendants failed to protect the plaintiff. This latter claim is based on the theory that Sheriff Kralik, although warned of the danger to the plaintiff, failed to act to protect him. Since neither party has filed objections to these recommendations, I review them for clear error. I find none. The recommendation that the motion addressed to the failure to protect claim be denied, however, requires clarification. For this recommendation, Judge Francis relied on the theory that

> municipal liability under Section 1983 may be predicated on municipal supervisors' knowing acquiescence in the unconstitutional behavior of their subordinates.

*Villante v. Dept. of Corr. City of New York,* 786 F.2d 516, 519 (2nd Cir.1986).

 Rockland County and its Sheriff's Department may only be found liable under Section 1983 for their *policies* that cause constitutional torts. *See McMillian v. Monroe County,* —— U.S. ——, ——, 117 S.Ct. 1734, 1736, 138 L.Ed.2d 1 (1997). Liability for damages in a Section 1983 action may not be based on the *respondeat superior* or vicarious liability doctrines. *See Monell v. Dep't of Social Services of the City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). A plaintiff need not show that the government had an explicitly stated policy. *See Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir.1995). An "official[ ] who [has] 'final policymaking authority' may by [his] actions subject the government to § 1983 liability." *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988) (quoting *Pembaur v. Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986)). "[T]he issue of final policymaking authority is a legal issue to be determined on the basis of state law rather than a factual issue to be decided at trial." *Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1349 (2d Cir.1994). In determining who is a policymaker, the Supreme Court has stated that

> [r]eviewing the relevant legal materials, including state and local positive law as well as custom or usage having the force of law, the trial judge must identify those

officials ... who speak with *final policy-making authority* for the governmental actor *concerning the action alleged to have caused the particular constitutional ... violation at issue.*

*Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 2723–24, 105 L.Ed.2d 598 (1989) (internal citations omitted) (emphasis supplied). *See also McMillian,* —— U.S. at ——, 117 S.Ct. at 1736.[5]

 Here, construing the plaintiff's complaint liberally, he has alleged that Sheriff Kralik is a policymaker for the County on issues of inmate security, and that the County should therefore be held liable for Sheriff Kralik's unconstitutional actions in failing to protect the plaintiff. As defendants have presented neither legal argument nor evidence regarding this issue and plaintiff's complaint states a claim for municipal liability, dismissal of the claims against Rockland County and its Sheriff's Department would be improper. *See Cruz v. Jackson*, 94 Civ. 2600, 1997 WL 45348 at *8 (S.D.N.Y. Feb.5, 1997) (allowing suit against county to continue based on alleged conduct of the Warden of the county jail in the absence of "specific state or local legal authority to the contrary") [6].

There are no objections to the Report's recommendations that all of the other claims be dismissed. Finding no clear error, the Court adopts these recommendations.

*Conclusion*

The Report is adopted. Summary judgment is denied as to plaintiff's claims against defendants Acuna, DeGroat and Makara for failing to intervene in the attack, plaintiff's claims against defendants Kralik, Rockland County and the Rockland County Sheriff's Department for failing to protect the plaintiff, and plaintiff's claims against defendant Kardian regarding the conditions of plaintiff's confinement, except for the claims regarding meaningful access to the court. All other claims against all other defendants are dismissed. In addition, the Court grants plaintiff's request for counsel and directs the Pro Se Office to seek volunteer counsel for the plaintiff.

SO ORDERED:

---

**5.** In *McMillian,* the Supreme Court held that the county sheriffs of Alabama are policymaking officials in the area of law enforcement, but for the State and not the counties. As a consequence, the county had no liability for their actions. The State, of course, is immune from suit. *See Seminole Tribe of Florida v. Florida,* —— U.S. ——, ——, 116 S.Ct. 1114, 1122, 134 L.Ed.2d 252 (1996).

**6.** The Second Circuit has held a county in New York State liable for the unconstitutional actions of its sheriff in setting a policy that subjected all arrestees to strip/body cavity searches. *See Weber v. Dell,* 804 F.2d 796, 803 (2d Cir.1986), *cert. denied,* 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987). While a provision of the New York Constitution states that "[t]he County shall never be made responsible for the acts of the sheriff," N.Y. Const. Art. XIII § 13(a), Section 1983 preempts this state provision. *See Sagendorf–Teal v. County of Rensselaer,* 100 F.3d 270, 276 (2d Cir.1996).