Hewlett BREWSTER, Plaintiff,

v.

NASSAU COUNTY, Nassau County Police Department, 2nd Precinct; Nassau County Correctional Facility; Nassau County Legal Aid Society; Nassau County Sheriff's Department; and Nassau County District Attorney Office, Defendants.

No. 03–CV–3110 (DRH)(ETB).

United States District Court,
E.D. New York.

Dec. 13, 2004.

---

Hewlett Brewster, New Hampton, NY, Plaintiff Pro se.

Lorna B. Goodman, Nassau County Attorney by Michael J. Langer, Esq., and Bethany Bresnaider O'Neill, Mineola, NY, for Nassau County Defendants.

Garbarini & Scher, P.C. by Gregg D. Weinstock, Esq., New York City, for Defendant Legal Aid Society.

## *ORDER*

HURLEY, District Judge.

### *INTRODUCTION*

Title 42 U.S.C. § 1983 provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... ."

Plaintiff Hewlett Brewster has brought a claim under Section 1983 against a variety of Nassau County entities and employees (collectively, "the Nassau County Defendants") and the Nassau County Legal Aid Society ("Legal Aid"). Both have moved to dismiss Brewster's complaint. For the reasons discussed herein, their motions are GRANTED, and Plaintiff's complaint is DISMISSED in its entirety as to all Defendants.

### *BACKGROUND*

According to Brewster's original and amended complaints and the exhibits attached to them, he was arrested by Nassau County police on February 7, 2003 for third-degree burglary. Brewster is alleged to have entered and removed property from a business by breaking a glass window, in the course of which, he cut himself and left traces of blood at the premises. Brewster was later arrested in Suffolk County for possessing stolen property, at which point a Nassau County detective interviewed Plaintiff and managed to obtain a sample of his blood, allegedly without his consent. The felony complaint against Brewster states that "DNA material from the burglary crime scene was found to be consistent with the DNA from the [Defendant]."

According to Brewster, he unknowingly purchased the stolen property, and did not consent to have a blood sample taken. Brewster further claims that the police mistook a red shirt he was wearing at the time of his interrogation as a sign of gang membership, which contributed to the police decision to arrest him, and "put his life in danger" by "put[ting] me in dispute" with other gang members. Following Brewster's arrest, Nassau County Corrections officers allegedly sexually harassed him, and "spread false accusations of stealing, homosexuality, and rape to intrap [sic] Claimant into giving a confession under duress." These misdeeds, alleges Brewster, "almost got Claimant raped, beaten, and killed," and have caused him "sleep and eating disorders, depression and nightmares."

Attorneys from the Nassau County Legal Aid Society were apparently designated as Brewster's defense counsel. According to Brewster, Legal Aid sent three successive attorneys to meet with him, all

of whom failed to request a reduction in bail, conduct a felony exam or a hearing, or otherwise dispose of the criminal charges. Brewster states that Legal Aid "knowingly disposed my rights to a felony exam, in hope that my unwanted incarceration would be forgotten and my existence lost in the system." He also alleges that the Legal Aid attorneys collaborated or conspired with the Nassau County District Attorney's Office. In sum, says Brewster, he "ha[s] not been criminally indicted and [has] been incarcerated for almost 6 months without an effective attorney," resulting in a "waiver of his constitutional rights to a fair and impartial hearing and possible trial."

Brewster brought suit under 42 U.S.C. § 1983 against the Nassau County Police Second Precinct, the Nassau County Correctional Facility, the Nassau County Sheriff's Department, the Nassau County District Attorney, and Legal Aid, for "violation of constitutional and civil rights laws." He specifically claims "municipal liability + deliberate indifference," "respondeat superior liability + deliberate indifference," "malicious prosecution and abuse of process," conspiracy, and "sexual abuse + entrapment." Brewster seeks many millions of dollars in compensatory and punitive damages.[1]

### DISCUSSION

#### I. Motion to Dismiss: Legal Standards

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir.1999). The court must accept the factual allegations contained in the complaint as true, and view the pleadings in the light most favorable to the non-moving party, drawing all reasonable inferences in his favor. *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994), *cert. denied*, 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994). Dismissal under Rule 12(b)(6) is appropriate only if it appears beyond doubt that a plaintiff can prove no set of facts entitling him to relief in support of his claim. *Zerilli–Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 79 (2d Cir.2003).

Additionally, this court must construe pro se complaints like Brewster's liberally, applying a more flexible standard to evaluate their sufficiency than the standard used to review complaints submitted by attorneys. *Lerman v. Bd. of Elections in City of New York*, 232 F.3d 135, 140 (2d Cir.2000). In order to justify the dismissal of a plaintiff's pro se complaint, it must be beyond doubt that he can prove no set of facts in support of his claim that would entitle him to relief. *Id.* And the above standards apply with particular strictness where, as here, the plaintiff files a pro se complaint alleging civil rights violations. *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir.2003).

Nevertheless, a litigant's exercise of his right to self-representation does not exempt him from complying with the relevant rules of procedural and substantive law. *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983). Although a court must accept

---

1. The sums that Brewster states vary, and it is not at all clear whether the figures represent individual sums, totals, or subtotals. Read as generously as possible, Brewster's amended complaint appears to request a total of $1,090,000.00 in compensatory and punitive damages. Because Brewster has failed to state any cause of action under Section 1983 sufficient to withstand the Defendants' dismissal motion, there is no need to address any of the issues surrounding the damages that he seeks.

the facts alleged in the non-movant's complaint, "conclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *In re Am. Exp. Co. Shareholder Litig.*, 39 F.3d 395, 400 n. 3 (2d Cir.1994). "[C]ourts do 'not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened.'" *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 772 (2d Cir.1994) (quoting *Kadar Corp. v. Milbury*, 549 F.2d 230, 233 (1st Cir.1977)). And this rule applies even to a prisoner appearing pro se and presenting civil rights claims. See *Nelson v. Michalko*, 35 F.Supp.2d 289, 292–93 (W.D.N.Y.1999).

II. *Dismissal of Brewster's Claims Against the Nassau County Legal Aid Society*

A. *Brewster Has Not Adequately Pleaded a Conspiracy Under Section 1983 Against the Legal Aid Society or Any Other Defendant.*

The only intelligible federal claim that Brewster alleges against Legal Aid is that it conspired with the Nassau County District Attorney, and perhaps other Nassau County Defendants, to violate Brewster's constitutional right to effective representation and a fair and speedy trial. Legal Aid argues that Brewster has no cognizable cause of action against it under Section 1983, because Brewster "has not alleged that his criminal conviction or sentence was reversed," or alternatively, because Legal Aid is not a state actor or acting under color of state law, and Brewster does not sufficiently allege that Legal Aid conspired with the state defendants.

■ Private actors generally cannot be liable under section 1983 unless their allegedly right-infringing conduct is fairly attributable to the State. See *Omnipoint Communications Inc. v. Comi*, 233 F.Supp.2d 388, 394 (N.D.N.Y.2002) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)). Even "[e]xtensive regulation and public funding, either alone or taken together, will not transform a private actor into a state actor; instead, the state must have exerted its coercive power over, or provided significant encouragement to, the defendant before the latter will be deemed a state actor." *Leeds v. Meltz*, 85 F.3d 51, 54 (2d Cir.1996).

■ In this spirit, the Supreme Court has held that an appointed counsel in a state criminal prosecution, though paid and indirectly supervised by the State, does not act "under color of state law" in the normal course of conducting a defense. *Tower v. Glover*, 467 U.S. 914, 920, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984). And the Second Circuit has stated that the Legal Aid Society in particular cannot be said to act under color of state law by virtue of the financial and other benefits that it receives from various governmental agencies, because there is insufficient governmental control, regulation, or interference in the manner in which the Society conducts its affairs. *Lefcourt v. Legal Aid Soc.*, 445 F.2d 1150, 1155 (2d Cir.1971).

However, as Legal Aid's briefing implicitly acknowledges, an otherwise private person or entity, including an appointed defense counsel, can act "under color of state law" if he or it engages in a conspiracy with state officials to deprive a person of his federal rights. *Tower v. Glover*, 467 U.S. at 920, 104 S.Ct. 2820. Brewster does allege that Legal Aid conspired with the Nassau County defendants to harm him and his family. But Legal Aid argues that Brewster's allegations are legally insufficient to establish a viable conspiracy

claim under Section 1983,[2] because Brewster "makes no *specific* allegations with regard to the involvement of Legal Aid in a supposed conspiracy with co-defendant state officials, even reading the Complaint in a favorable light for plaintiff." [Emphasis in original.]

■ An otherwise invalid 1983 claim cannot survive a motion to dismiss merely by mentioning the word "conspiracy." Claims alleging conspiracies to violate civil rights are held to a heightened pleading standard. See *Julian v. New York City Transit Auth.*, 857 F.Supp. 242, 252 (E.D.N.Y.1994). The Second Circuit has explained that these claims are "so easily made and can precipitate such protracted proceedings with such disruption of governmental functions" that "detailed fact pleading is required to withstand a motion to dismiss" them. *Angola v. Civiletti*, 666 F.2d 1, 4 (2d Cir.1981). "A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir.1983). A conclusory conspiracy allegation may "ring especially hollow" where, as in the present case, there is an inherently adversarial relationship between the purported parties to the conspiracy. See *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir.2002).

■ Conspiracies are by nature secretive, and often must be proven by circumstantial, rather than direct, evidence. *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir.1999). But to survive a motion to dismiss, the plaintiff must at least plead some particular acts or facts providing a legal basis for his claim. *Polur v. Raffe*,

912 F.2d 52, 56 (2d Cir.1990). Specifically, a plaintiff must allege: (1) an agreement between two or more state actors or between a state actor and a private entity (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal, and causing some harm. *Ciambriello*, 292 F.3d at 324–25.

Brewster's pleadings are insufficient to support a conspiracy claim. Brewster alleges that he was targeted by the police and abused by the corrections officers; that the District Attorney was aware of these misdeeds but did not drop the criminal case against him; and that Legal Aid waived his rights and failed to represent him effectively, in order to "benefit themselves and/or District Attorney." Brewster claims that taken together, this amounts to "a conspiracy intent on jeopardizing claimant and his family," and this "conspiracy was intentional." But Brewster does not actually allege any facts indicating an agreement to act in concert to harm him. Accordingly, his claims of conspiracy regarding Legal Aid must be dismissed.

B. *Supplemental Jurisdiction Is Inappropriate as to Any State–Law Claims Against Legal Aid.*

■ To the extent that Brewster is also claiming that Legal Aid should be liable for legal malpractice (and it is unclear from his pleadings whether Brewster is claiming any such thing), or for any other tortious act that does not involve conspiring with state actors, his claim is not cognizable under Section 1983, or any other federal law. See *Bourdon v. Loughren*, 386 F.3d 88, 90 (2d Cir.2004). Legal Aid nevertheless urges this Court to exercise

**2.** Legal Aid's memorandum also mentions, without any explanation, that Brewster has not set forth a viable cause of action for conspiracy under 42 U.S.C. § 1985. Because there is no indication in Brewster's submissions that he is pleading under Section 1985 as well as Section 1983; the former will not be addressed.

its discretionary supplemental jurisdiction over, and dismiss, any related state malpractice claims that Brewster might have.

It is true, as Legal Aid argues, that a federal court may properly exercise supplemental jurisdiction over state-law claims arising out of the same case or controversy as federal claims properly before the court. See 28 U.S.C. § 1367(a). It is also correct that federal courts should exercise supplemental jurisdiction in order to further the ends of judicial economy, where the state-law claims in question do not involve novel or complex issues of state law. See generally *United Mine Workers v. Gibbs,* 383 U.S. 715, 725–29, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Brewster's state-law claims may well be, as Legal Aid claims, "essentially a garden variety legal malpractice claim which does not involve novel or complex issues of state law." But this cannot be ascertained only through the pleadings, and more specifically apposite authority weighs against Legal Aid on this point.

The Supreme Court and Second Circuit have both cautioned that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Travelers Ins. Co. v. Keeling,* 996 F.2d 1485, 1490 (2d Cir.1993) (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)). And in a similar previous case in this district, following dismissal of the plaintiff's Section 1983 claims, Judge Spatt refused to extend supplemental jurisdiction to cover any state malpractice claims against Legal Aid. Weighing in particular against the exercise of supplemental jurisdiction were the dismissal of the federal claims at an early stage of the litigation, the plaintiff's low chance of succeeding on the merits of his

state claim, and the fact that "the plaintiff did not specifically plead a state law claim of legal malpractice, and it was the Court ... that gave the plaintiff the benefit of the doubt by reading into the Amended Complaint a possible state law claim of legal malpractice." *Warren v. Fischl,* 33 F.Supp.2d 171, 178 (E.D.N.Y.1999). Judge Spatt's reasoning is persuasive. This Court similarly declines to extend its supplemental jurisdiction to cover any potential legal malpractice claims that Brewster might have against Legal Aid. For the same reasons, the exercise of supplemental jurisdiction over any other state law claims that Brewster might inferably allege against any other Defendant would be imprudent and is hereby declined.

### III. Brewster's Claims Against the Nassau County Defendants Must Be Dismissed

#### A. Brewster Has Failed to State a Claim for Municipal Liability.

Brewster's complaint repeatedly claims damages for some or all of the defendants' "municipal liability + deliberate indifference" or "respondeat superior liability + deliberate indifference." Read with the requisite liberality, Brewster's complaint seeks to hold Nassau County as a whole, or its various sub-entities, liable for the allegedly wayward acts of individual employees in the Nassau County District Attorney's Office, Correctional Center, Sheriff's Office, and Second Precinct. Brewster's claims fail because he has not adequately pleaded that the alleged acts comprised part of a municipal "policy."

A municipality generally cannot be held liable under Section 1983 for the alleged unconstitutional actions of its employees who are below a "policymaking level." That is, municipalities cannot be liable under the *respondeat superior* doctrine for their employees' torts. *Monell v.*

*Dep't of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Rather, municipalities can generally only be liable for actions taken pursuant to "official municipal policy" that cause constitutional torts. *Owens v. Haas,* 601 F.2d 1242, 1246 (2d Cir.1979) (quoting *Monell,* 436 U.S. at 691, 98 S.Ct. 2018). To hold a municipality liable in such an action, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983). Brewster does not claim that the alleged torts against him were undertaken pursuant to any official or explicit Nassau County policy.

■■■■ Municipal policy may also be inferred from the informal acts or omissions of supervisory municipal officials. *Turpin v. Mailet,* 619 F.2d 196, 200 (2d Cir.1980), *cert. denied, Turpin v. City of W. Haven,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980). Where a municipality has notice of "a pattern of constitutionally offensive acts" by its employees, but fails to take any remedial steps in response, the municipality may be held liable for similar subsequent acts, if the inaction is determined to have been the result of "deliberate indifference" or "tacit authorization" of the offensive acts—in effect, an "unlawful municipal *policy* of ratification of unconstitutional conduct." *Batista,* 702 F.2d at 397 (emphasis added); *see also Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991); and *Turpin,* 619 F.2d at 201.

■■■■ However, a single incident involving an employee below the policymaking level will not suffice to support an inference of a municipal custom or policy, *Vann v. City of New York,* 72 F.3d 1040, 1050 (2d Cir.1995) (citing *Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)), at least absent factual allegations "tending to support, at least circumstantially, such an inference." *Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995). In particular, a complaint alleging that a municipality was "deliberately indifferent" to the need to train, monitor, or supervise an officer, but not alleging any facts beyond the specific instance giving rise to the complaint, generally fails to adequately to plead a custom or policy on the part of the municipality. *Dwares v. City of New York,* 985 F.2d 94, 101 (2d Cir.1993); *Sarus v. Rotundo,* 831 F.2d 397, 402 (2d Cir.1987).[3]

■■■■ In the present case, Brewster has not made any allegations that the behavior of the various individual defendants is part of a recurring pattern, or has previously been the subject of complaints. He has thus failed to show a culpable municipal policy, and his claim of municipal liability based on deliberate indifference must be dismissed.

B. *Brewster Fails to State Any Cognizable Claim Against the Individual Nassau County Defendants.*

In addition to his municipal liability claims, Brewster's complaint, read liberally, alleges various constitutional torts by individual Nassau County officials, officers,

---

**3.** In some exceptional cases, the single event giving rise to litigation may, by itself, suffice to show a "policy." *Turpin v. Mailet,* 619 F.2d 196, 202 (2d Cir.1980). But a municipality cannot be liable for such an event unless it is "so severe as to reach the level of 'gross negligence.'" *Owens v. Haas,* 601 F.2d 1242, 1246 (2d Cir.1979) (single "brutal and premeditated" beating of inmate by group of county jail guards of varying ranks, one of whom admitted to using "show of force" to control disobedient inmates, warrants inferring policy of inadequate training or supervision). Plaintiff's allegations do not suggest that this is such a case.

or employees. For varying reasons, each of these claims is legally insufficient to withstand the Defendants' dismissal motion.

    1. *Brewster cannot establish malicious prosecution because his criminal case has not terminated in his favor.*

■■■■ Brewster accuses the Nassau County District Attorney of malicious prosecution. This traditionally common-law-based tort may be the basis for liability under Section 1983, and Federal courts borrow its substantive elements from state law. See *Washington v. County of Rockland*, 373 F.3d 310, 315 (2d Cir.2004). In order to prevail on a malicious prosecution claim under New York law, a plaintiff must establish that: (1) acting maliciously and (2) without probable cause, (3) the defendant initiated a criminal proceeding against the plaintiff (4) that terminated in the plaintiff's favor. *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir.2003) (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455 N.E.2d 1248 (1983)). Where a prosecution does not result in an acquittal, it is generally not deemed to end in the accused's favor for purposes of a malicious prosecution claim, unless its final disposition "is such as to indicate the accused's innocence." *Fulton v. Robinson*, 289 F.3d 188, 196 (2d Cir.2002). In this case, the criminal proceeding against Brewster has not terminated in his favor (or at all). Accordingly, his malicious prosecution claim is facially invalid, and the Defendants are entitled to its dismissal under Rule 12(b)(6).

    2. *Brewster cannot establish abuse of process, because he has not offered any collateral or improper motive for the process.*

■■■■ Brewster similarly accuses the Nassau County District Attorney of abuse of process. As with malicious prosecution, state law provides the elements of this cause of action under Section 1983. See *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). Under New York law, a malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process (2) with an intent to do harm without excuse or justification (3) in order to obtain a collateral objective that is outside the legitimate ends of the process. *Id.* Retaliation or retribution are perhaps the most common "collateral objectives." See *id.;* and *Duamutef v. Morris*, 956 F.Supp. 1112, 1118 (S.D.N.Y.1997).

■■■■ The New York Court of Appeals has suggested that to withstand a motion to dismiss a plaintiff must allege "the gist of the action for abuse of process, which is the improper use of process after it is issued." *Curiano v. Suozzi*, 63 N.Y.2d 113, 480 N.Y.S.2d 466, 469 N.E.2d 1324, 1326 (1984) (internal quotations omitted). "A malicious motive alone, however, does not give rise to a cause of action for abuse of process." *Id.* Thus, to state a claim for abuse of process, the "plaintiff must establish that the defendants had an improper *purpose* in instigating the action." *Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir.2003) (emphasis in original) (citing *Dean v. Kochendorfer*, 237 N.Y. 384, 143 N.E. 229, 231 (1924)). Accordingly, to state a claim for abuse of criminal process, it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution. *Id.*

■■■■ In this case, Brewster's complaint arguably alleges an improper purpose aris-

ing out of the employment of legal process against him. It states that the Defendants "knowingly targeted Claimant for a crime [he] did not commit," "personally intended to violate and harm claimant and his family personal and business acts of life," "targeted claimant and his family for acts of unknown reasons," and "failed to present sufficient evidence ... and/or failed to support the alleged complaint." But taken together, even assuming that these accusations suffice to state any improper purpose for Brewster's arrest at all, they are simply too vague and conclusory to support a cause of action for abuse of process. See *Duamutef v. Morris,* 956 F.Supp. 1112, 1119 (S.D.N.Y.1997).

3. *Brewster cannot state a claim for false arrest, because the authorities had probable cause to arrest him.*

■■■■ As with the two prior causes of action, Brewster's claim of false arrest is determined under New York law. See *Davis v. Rodriguez,* 364 F.3d 424, 433 (2d Cir.2004). To state a claim for false arrest under New York law, a plaintiff must show that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged or justified. *Savino v. City of New York,* 331 F.3d 63, 75–76 (2d Cir.2003). The existence of probable cause to arrest the plaintiff constitutes justification for his confinement, and is a complete defense to false arrest. *Covington v. City of New York,* 171 F.3d 117, 122 (2d Cir.1999).

■■■■ The police have probable cause for an arrest when, at the moment of the arrest, "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had commit-

ted or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). The existence of probable cause to arrest may be determined as a matter of law if there is no dispute as to the pertinent events and the knowledge of the arresting officers. *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996). Thus, an arrest is justified, and a claim for false arrest must be dismissed pursuant to Rule 12(b)(6), if the undisputed facts in plaintiff's complaint demonstrate that the arresting officers had probable cause to believe that the suspect had committed a crime. See *Daniels v. City of New York,* No. 03 Civ. 0809, 2003 WL 22510379, at *2–4 (S.D.N.Y. Nov. 5, 2003).

■■■■ In this case, Brewster insists that he "unknowingly purchased stolen property," that he did not commit burglary, and that Nassau County detectives took a sample of his blood without his consent. But nowhere does Brewster argue that the police did not have probable cause to arrest him at the time process was issued. It is undisputed that Brewster was found in possession of property that had been stolen; this alone was sufficient to establish probable cause for his arrest. See *Krause v. Bennett,* 887 F.2d 362, 370 (2d Cir.1989) (probable cause to arrest for knowingly possessing stolen property was established by suspect's possession of stolen item, despite his professed ignorance as to fact that it was stolen).

4. *Brewster's "sexual harassment" and "entrapment" allegations, read as claiming a denial of his right not to be harmed while in custody, do not allege physical injury, and are thus barred under the Prison Litigation Reform Act.*

■■■■ Brewster's complaint alleges that he was the victim of "sexual harassment"

and "entrapment."[4] Such claims, without elaboration, would not suffice to support Section 1983 liability in this case.[5] But Brewster is apparently using these terms in reference to his charge that Nassau County Corrections officers subjected him to "abusive language, gestures, taunts, jeers, laughter, and harassment," and spread false rumors among other inmates that Brewster is a homosexual, thief, or rapist, in order to coerce him into confessing to various unspecified crimes. Brewster's complaint additionally alleges that Nassau County detectives "put his life in danger with gangmembers" by accusing him of gang membership. According to Brewster, these acts resulted in various forms of harm to him, including "mental anguish," stress, depression, and loss of reputation.

The County Defendants treat these allegations as an Eighth Amendment "cruel and unusual punishment" claim, and argue that "allegations of verbal abuse do not state a claim under § 1983," and that "Plaintiff is incarcerated and, as such, because he only alleges emotional injury, he has failed to properly state a claim under § 1983." Brewster's claim is in fact properly classified as an alleged violation of the Fourteenth Amendment right to due process, and not the Eighth Amendment's prohibition of "cruel and unusual punish-ment," because Brewster is detained and awaiting criminal proceedings—and has not yet been punished for any underlying criminal charge. See *Benjamin v. Fraser*, 343 F.3d 35, 49–50 (2d Cir.2003). This difference is academic, however. Brewster has failed to state a cause of action, as the Defendants have noted.

The Fourteenth Amendment has been held to afford pretrial detainees at least as much protection from cruel detention conditions as the Eighth Amendment affords postconviction prisoners from cruel punishment, *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983), and Section 1983 allows lawsuits for violations of either Amendment. See, e.g., *Benjamin v. Malcolm*, 803 F.2d 46, 48 (2d Cir.1986). Both impose an undisputed duty on correctional officials to protect prisoners or detainees from violence at the hands of their fellow prisoners or detainees. *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir.1997); *Heisler v. Kralik*, 981 F.Supp. 830, 836 n. 1 (S.D.N.Y.1997).

But as with any cause of action in tort, a Section 1983 claimant must allege some actual, cognizable injury. See *Doe v. Welborn*, 110 F.3d 520, 523 (7th Cir.1997). A correctional officer's deliberate spreading of rumors likely to cause an inmate

---

4. Actually, Brewster's amended complaint alleges "intrapment"; under the liberal standard with which pro se submissions are read, it must be presumed that he is referring to "entrapment."

5. Sex-based discrimination, including sexual harassment, may be actionable under Section 1983 as a violation of equal protection. See *Kern v. City of Rochester*, 93 F.3d 38, 43 (2d Cir.1996). But nowhere does Brewster allege any facts tending to show that he was actually discriminated against because of his sex or sexual orientation, or harassed in a sexual manner. Compare *Thomas v. D.C.*, 887 F.Supp. 1, 3–4 (D.D.C.1995) (allegations that prison official forcibly touched or tried to touch inmate's penis on at least two occasions, in attempt to coerce prisoner into engaging in sexual relations, stated a claim of sexual assault, coercion, and harassment).

Entrapment is an affirmative defense in criminal cases, *U.S. v. Bala*, 236 F.3d 87, 94 (2d Cir.2000), not a constitutional offense on which Section 1983 liability can properly be based, *DiBlasio v. City of New York*, 102 F.3d 654, 656–57 (2d Cir.1996), even where entrapment can be established as a defense to an underlying criminal charge. See *Smith v. Garretto*, 147 F.3d 91, 94 (2d Cir.1998).

harm at the hands of his fellow inmates traditionally supported a cause of action under Section 1983, even if that inmate suffered "mere" psychological harm from living in fear of an attack. See *Thomas v. D.C.*, 887 F.Supp. 1, 3–5 (D.D.C.1995). The Prison Litigation Reform Act of 1995 ("PLRA") ended that tradition, however. The PLRA states in relevant part: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). And the PLRA further states: "As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The PLRA therefore clearly applies to this case.

As the Defendants note, nowhere in Brewster's complaint does he allege that any physical harm has befallen him while in detention. Rather, he repeatedly discusses the "distress," "mental anguish," and other psychological and emotional injuries that he has suffered. Even assuming that Brewster has suffered all of the harms that he alleges, he still has not stated a cognizable cause of action for the violation of his right not to be harmed while in custody.

### CONCLUSION

For all of the reasons stated above, pursuant to Federal Rule of Civil Procedure 12(b)(6), Brewster's Section 1983 claims are DISMISSED in their entirety as to all Defendants, and this Court declines to exercise supplemental jurisdiction against any additional state law claims that Brewster may have against Legal Aid or any other Defendant.

**SO ORDERED.**